THE PEOPLE OF THE STATE OF NEW YORK ex rel. ST. ALBANS-SPRINGFIELD CORPORATION, Respondent, *v.* HENRY L. CONNELL et al., Constituting the Board of Standards and Appeals of the City of New York, Appellants.

(Argued June 1, 1931; decided July 15, 1931.)

*Arthur J. W. Hilly, Corporation Counsel (Willard S. Allen, J. Joseph Lilly* and *Martin H. Murphy* of counsel), for appellants. The Board of Standards and Appeals did not abuse its discretion in denying relator's application. (*Matter of Goldenberg* v. *Walsh,* 215 App. Div.

396; 242 N. Y. 576; *Matter of N. & H. Building Co.
v. Walsh,* 223 App. Div. 844; *People ex rel. Ruth v. Leo,*
197 App. Div. 942; *Lincoln Trust Co. v. Williams Bldg.
Corp.,* 229 N. Y. 313; *People ex rel. Facey v. Leo,* 230
N. Y. 602; *People ex rel. Helvetia Realty Co. v. Leo,* 231
N. Y. 619; *People ex rel. Sheldon v. Board of Appeals,*
234 N. Y. 484; *People ex rel. Smith v. Walsh,* 211 App.
Div. 205; 240 N. Y. 606; *Matter of Sloan v. Walsh,* 245
N. Y. 208; *Matter of Sagamore Road Corp. v. Lee,* 224
App. Div. 744; 250 N. Y. 532; *Matter of Revorg Realty
Co. v. Walsh,* 225 App. Div. 774; 251 N. Y. 516; *Matter
of Wilkins v. Walsh,* 225 App. Div. 774; 251 N. Y. 518;
*Matter of Beardsley Realty Co. v. Walsh,* 225 App. Div.
815; 252 N. Y. 571.) Under the provisions of subdivision 4 of section 719-a of the New York Charter the
Special Term was without power to direct the referee
to take evidence *de novo.* (*People ex rel. Helvetia Realty
Co. v. Leo,* 183 N. Y. Supp. 37; 195 App. Div. 887; 231
N. Y. 619; Civ. Prac. Act, § 1283; *Matter of Multiplex
Garage, Inc., v. Walsh,* 213 App. Div. 155.)

*Stephen Callaghan* for respondent. The only available
use for the relator's property is a gasoline service station.
(*People ex rel. Fordham M. E. Church v. Walsh,* 244 N. Y.
280; *People ex rel. Werner v. Walsh,* 212 App. Div. 635;
240 N. Y. 689; *Matter of Goldenberg v. Walsh,* 215 App.
Div. 396; 242 N. Y. 576; *Matter of Revorg Realty Co. v.
Walsh,* 225 App. Div. 774; *People ex rel. Smith v. Walsh,*
211 App. Div. 205; 240 N. Y. 606.) The order of reference to take proof on the question of whether there are
practical difficulties or unnecessary hardships herein
was proper. (*People ex rel. Helvetia Realty Co. v. Leo,*
183 N. Y. Supp. 37; 195 App. Div. 887; 231 N. Y. 619;
*Matter of Caponi v. Walsh,* 228 App. Div. 86; *Matter of
Mazzarell v. Walsh,* 231 App. Div. 748; *People ex rel.
Hayman v. Walsh,* 223 App. Div. 752; *People ex rel.
Gross v. Walsh,* 213 App. Div. 878.)

CRANE, J.   The St. Albans-Springfield Corporation is the owner of a vacant lot on the northeast corner of Foch and Springfield boulevards, in the borough of Queens, city of New York, having a frontage of 100 feet on Foch boulevard and 86.52 feet on Springfield boulevard.   The section is in the outskirts of the city of New York in what is still a rural community and farm lands. Immediately south of Foch boulevard the land is still used for farming and this condition exists about half a mile down Springfield boulevard toward the Merrick road.   While some of the property has been laid out in building lots, almost the entire section consists of vacant land, there being only six buildings in the entire area extending 400 feet from the premises in each direction. Four of these are brick buildings, with stores in the ground floor and apartments for dwelling purposes overhead, which cannot be rented for enough to bring in a reasonable return upon the investment.   As transit facilities do not reach this territory, it has been slow in development, the few families who do live in the neighborhood being transported by bus or in their own automobiles.

Pursuant to the Building Zone Resolutions adopted in accordance with the powers given the Board of Estimate and Apportionment, under section 242-a of the Greater New York Charter (Laws of 1901, ch. 466, amd. Laws of 1917, ch. 601), the relator's property has been placed in a business district.   Finding that it could not profitably dispose of the property either for residential or business purposes, it applied to the Board of Standards and Appeals to permit the erection upon the corner lot of a gasoline station.   Section 21 of the Amended Building Zone Resolution of the City of New York permits the Board of Standards and Appeals to vary any provision of the zoning requirements where there are practical difficulties or unnecessary hardships in the way of carrying them out.   After a brief statement of the case before the Board the application was denied, whereupon the

relator obtained an order of certiorari to review the decision, pursuant to section 719-a of the charter. Upon the return of the Board, the Special Term made an order referring the matter to a referee to take proof of all practical difficulties and unnecessary hardships in the way of carrying out the strict letter of the Zoning Resolution, reciting in the order that after hearing argument it was necessary to take testimony for the proper disposition of the case. The referee took testimony and made findings of fact and conclusions of law fully supported by the testimony taken. He found that Foch and Springfield boulevards are much traveled arterial highways, Foch boulevard being a continuation in the city of New York of the Southern State parkway, and Springfield boulevard running at right angles from Jericho turnpike south across the Merrick road connecting with the Rockaway boulevard. Travel upon both of these streets is very heavy through traffic. Stores or business would not benefit by such use of these streets as parking on the sides thereof would almost be prohibitive. There are no residences in the neighborhood to support a business either upon Foch boulevard or Springfield boulevard at or near the intersection thereof. Less than thirteen per cent of the lots in the area zoned for business are now used for business, and eighty-seven per cent of such lots are either unbuilt upon or the buildings thereon are unoccupied. Taking both sides of Foch boulevard and Springfield boulevard, for a distance of one mile north, east, south and west of their intersection, there are 1,481 lots zoned for business. On these 1,481 lots there are now erected 189 buildings with stores, 62 being vacant. Ninety-two per cent of the lots zoned for business are unoccupied. The entire area of property shown on the map has been laid out in streets regulated, graded and curbed, and consequently can be used only for building, business or dwellings. The business buildings, says the referee, could not be sold for a fair price, and they could

not be rented, because the number of dwelling houses in the vicinity is not sufficient to support a business.

Turning to the evidence, we find officials from such large institutions as the Williamsburgh Savings Bank, the Dime Savings Bank, and the National Title Company testifying that their institutions will not loan a dollar in this business section. The property would simply come back on their hands, as the income would be insufficient to pay the carrying charges.

The referee, therefore, finds that loans cannot be obtained upon this business property on these highways. In addition to the taxes upon said property there is a lien by reason of an assessment levied for the construction of sewers. Those who have purchased lots from the relator in the vicinity have been unable to pay interest on their mortgages, taxes and assessments. The referee states as a fact that the site in question is not suitable for the erection of a business building of any character whatever, and that a gasoline-selling station is the only available use to which the property in question can be put.

Under such circumstances, is the relator to be deprived of all use of its property and any income therefrom by reason of this Zoning Resolution? There is no claim made by the relator that the zoning of this entire territory, according to the map in evidence, has been illegal and improper. It does claim, however, that as to it the restriction is unreasonable, arbitrary and illegal.

The report of the referee was confirmed by the order appealed from, which directs the Board of Standards and Appeals to grant the relief, and to permit the relator to erect upon his property the gasoline station as requested.

The Board of Standards and Appeals now questions the power of the Special Term to review its order in the manner indicated and insists that the Supreme Court is limited on certiorari to review merely the Board's juris-

diction.  It presses upon our attention the case of *People ex rel. Helvetia Realty Co.* v. *Leo* (183 N. Y. Supp. 37; affd., 195 App. Div. 887; 231 N. Y. 619).  Judge GIE-GERICH, at Special Term, said that the taking of proof, pursuant to the provisions of subdivision 4 of section 719-a of the Greater New York Charter, is limited to such matters as affected the jurisdiction of the body or officer whose action is sought to be reviewed, and hence the matter cannot be heard *de novo*.  The affirmance of that case in this court was without opinion and without approval of this statement.  The Board had permitted a variance which was approved by the Special Term and on appeal.  The power of review given to the courts was not directly involved as it might have been if the application for a variance had been denied and the owner's rights thus restricted.

The sections of the charter to which this opinion makes reference do not justify the limitation stated by the justice.  Section 719-a gives to any person aggrieved by a decision of the Board of Standards and Appeals a right to present to the Supreme Court a petition setting forth that the decision is illegal in whole or in part, and specifying the grounds of the illegality.  The justice of the court may allow a writ of certiorari directed to the Board of Appeals to review such decision and shall prescribe the time in which a return thereto must be made.  Section 719-a (4) reads: " If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determinations of the court shall be made.  The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

This procedure is not unlike the method by which tax

assessments were reviewed. (*People ex rel. Manhattan Ry. Co.* v. *Barker*, 152 N. Y. 417.) Chapter 269 of the Laws of 1880 enacted that on the return to a writ of certiorari: " If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, the court may take evidence or may appoint a referee to take such evidence as the court may direct, and report the same to the court, and such testimony shall constitute a part of the proceedings upon which the determination of the court shall be made." (§ 4.) This court in the opinion in that case noted the " novel functions " attached to the writ of certiorari hitherto unknown to such methods of review. " The special statutory writ now before us differs from its predecessors in one remarkable respect, in that it permits a redetermination of all questions of fact upon evidence, taken in part at least, by the Special Term, or under its direction " (p. 430).

The charter provisions, above referred to, likewise have this novel feature, that upon an appeal by the order of certiorari to the Supreme Court additional testimony may be taken upon which the court may reverse, or affirm wholly, or partly, or may modify the decision brought up for review. Practice followed in *Anderson* v. *Jester* (206 Iowa, 452); *Sundlun* v. *Zoning Board of Pawtucket* (50 R. I. 108); *McCabe* v. *Zoning Board of Providence* (50 R. I. 449).

Because of the rather informal procedure before the Board of Standards and Appeals (*Matter of Caponi* v. *Walsh*, 228 App. Div. 86, 90), a further and more formal and judicial review by the Supreme Court was no doubt considered necessary in some circumstances. (See, also, *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280, 286.) All powers, however, have their inherent limitations to be applied with wisdom, judgment and discretion. A Special Term of the Supreme Court having this rather wide power to supplement the record is not

supposed to exercise it as though it were the Board of Standards and Appeals. The power is to be used cautiously, with extreme care where there appears to be a probability that the effect of the additional testimony, if it is received, will be to show the ruling complained of to be wrong; and when the whole case comes to be decided upon the new testimony and the old, the court, even then, is not to put itself in the position of the Board, is not to substitute its own discretion for that of the administrative agency established by the statute in a situation where the exercise of discretion is possible. The necessity for a variance is to be determined under section 21 of the Amended Building Zone Resolution by the Board of Standards and Appeals. Its judgment should be final unless it clearly appears to be arbitrary or contrary to the law. The powers of the Board, as outlined in section 719, are very largely administrative, including much that has to do with the zoning situation. The courts must not trespass upon this administrative work, but confine their review to correcting legal errors. (*Zahn* v. *Board of Public Works*, 195 Cal. 497; *Sundlun* v. *Zoning Board of Pawtucket*, 50 R. I. 108.)

How far zone planning may encroach upon the free use of private property was considered by the United States Supreme Court in *Nectow* v. *Cambridge* (277 U. S. 183). The zoning plan, legal as to other property included within the district, was considered unconstitutional as to the particular property owned by one who sought relief from its restrictions. The master to whom the matter had been referred had reported that the districting of the plaintiff's land in a residence district would not promote the health, safety, convenience and general welfare of the inhabitants, taking into account the natural development of the city and the character of the district and the resulting benefit to accrue to the whole city. In deciding that the limitation was unconstitutional as to the owner, the court said: " The governmental power

to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare" (p. 188). The court, however, added a word of caution: " A court should not set aside the determination of public officers in such a matter unless it is clear that their action ' has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense ' " (p. 187).

We think substantially the same restrictions define the power of the court in nullifying the orders of the Board of Standards and Appeals.

Considering the nature of the relator's property in this case, and the finding of the referee, the ruling of the Board of Standards and Appeals deprives the owner of any beneficial use of his property. When, if ever, the city grows and develops so that business may be profitably conducted in the neighborhood or on Springfield and Foch boulevards, the legal proposition may also change with the situation. Law is applied to facts, and as the facts change in the process of time the law adapts itself accordingly. That which may be unconstitutional to-day may be legal years hence. The zoning of farm land is different from the zoning of a city. Consequently, the erection and maintenance of a gasoline station on this property on the northeast corner of Foch and Springfield boulevards, while a proper use to-day, may become unnecessary with the development of business. We may take judicial notice of the fact that the capital expenditure for such a structure will be comparatively slight. The erection of the station in order to meet a temporary need will not be permitted to thwart for all time a far-sighted system of municipal development.

To what extent and in what circumstances long-time planning for zoning purposes is a valid exercise of legislative power is a question with aspects too many to be answered in one decision. We are not required to say that a merely temporary restraint of beneficial enjoyment is unlawful where the interference is necessary to promote the ultimate good either of the municipality as a whole or of the immediate neighborhood. Such problems will have to be solved when they arise. If we assume that the restraint may be permitted, the interference must be not unreasonable, but on the contrary must be kept within the limits of necessity. Where as here the ultimate good can be attained and a productive use allowed, a use that will be temporary and provisional and readily terminable when new conditions supervene, the landowner is wronged if the allowance is refused.

The order, therefore, of the court below, which authorizes and permits the erection and use of this gasoline station must be modified by a direction that when the circumstances so change by the development of the city that the property is reasonably susceptible of being applied to business uses, then, upon the application of the authorities or any one interested, the gasoline station must be removed.

The order should be modified as directed in this opinion and as thus modified affirmed, without costs.

CARDOZO, Ch. J., KELLOGG, O'BRIEN and HUBBS, JJ., concur; POUND and LEHMAN, JJ., dissent on the ground that the statute does not contemplate a judicial review and determination by the court on the merits.

Ordered accordingly.