In the Matter of the Application of Heywood H. Hopkins et al., Petitioners, for a Certiorari Order against The Board of Appeals of the City of Rochester, Monroe County, New York, et al., Respondents.

Supreme Court, Monroe County, September 12, 1942.

*Goodwin, Nixon, Hargrave, Middleton & Devans* for Heywood H. Hopkins et al., petitioners.

*Charles B. Forsyth, Corporation Counsel* (*Max Cohen* of counsel), for Board of Appeals of City of Rochester, respondents.

*Chamberlain, Page & D'Amanda,* for Harold L. Field and Kenneth H. Field, as executors of Alice B. V. Field, deceased, interveners.

*Costello, Cooney & Fearon* for 34 South Goodman Street, Inc., interveners.

VAN VOORHIS, J. The court has reviewed a previous determination by the Zoning Board of Appeals which granted permission to the Field estate for a gasoline station upon these premises. The order of the Zoning Board of Appeals permitting such use was reversed, and the matter remitted to the Board with instructions to make findings of fact in support of whatever determination it might reach on a personal examination of the premises by its members, or to take evidence upon a new hearing, or both, with leave to petitioners and to the intervenors to introduce further evidence upon another hearing if another hearing were had.

Pursuant to this order, the Zoning Board of Appeals held a further hearing upon April 23, 1942, at which evidence was taken. The Board reserved decision and later granted permission for a gasoline station upon the ground that practical difficulty and unnecessary hardship would be involved in carrying out the strict letter of the zoning ordinance. Particular findings of fact were made in support of this determination. The petitioners in this proceeding ask to have the decision of the Zoning Board annulled upon the ground that some of the findings of fact are without evidence to support them or are contrary to the evidence, and that no facts constituting unnecessary hard-

ship or practical difficulty have been disclosed. At the outset it is to be observed that the function of the court upon a proceeding of this nature is not to substitute the judgment of the court for that of the Board. (*People ex rel. Sullivan* v. *McLaughlin,* 266 N. Y. 519.) Likewise there is a presumption in favor of the determination of the Board. (*People ex rel. Werner* v. *Walsh,* 212 App. Div. 635, 640.) If evidence of practical difficulty or unnecessary hardship was brought before the Board, its determination must be upheld unless the action by the Board is so contrary to the evidence that under similar circumstances a verdict of a jury would be set aside upon that ground.

It is unnecessary to repeat the general facts relating to the situation, which have been sufficiently stated on the previous proceeding. (*Matter of Hopkins* v. *Board of Appeals, Rochester,* 178 Misc. 186.) The land in question is situated at the northwest corner of Park avenue and South Goodman street, and contains two single-family dwellings, constructed more than half a century ago, one of which fronts upon South Goodman street, and the other upon Park avenue. The dimensions of the lot are approximately 113 feet on Park avenue by 65 feet on Goodman street. The district in which these premises are situated is described as an " A Residence District " under the city zoning ordinance, in which the use of properties is limited essentially to residential purposes, including boarding houses and apartment houses. . The corner has become largely commercialized. There are two commercial buildings and an apartment house on the other three corner lots, and other commercial buildings along Park avenue in the vicinity of the corner. The Board of Appeals has found that both houses are obsolete for single-family use, and that the nature of the construction, the locality, and other special conditions affecting the lot are such as to make it economically unsound to remodel, and that the premises are unsuitable for use as an apartment or for residential or for office purposes. The Board further found that a setback line of twenty feet on Park avenue and nine feet on South Goodman street has been created by municipal ordinance, and that, by reason of that circumstance, the peculiar construction of the houses, the character of the corner and other surrounding conditions, the premises in question are unique and present problems which are peculiar to themselves which do not apply to other parcels in the same zone.

The evidence before the Board may be examined to supplement as well as to sustain the findings of fact, the findings being necessary only in so far as they embrace facts known to the members of the Board which do not appear in the evidence.

(*People ex rel. Fordham M. R. Church* v. *Walsh,* 244 N. Y. 280, 287.)

The court held in the previous proceeding that the Board had received no evidence on which to grant an exception in the case of this property by reason of undue hardship or practical difficulty, and that special findings of fact had not been made setting forth that the members of the Board from their own experience knew that the premises had become obsolete for their former purposes, without any reasonable possibility of their being adapted to other conforming uses except at such risk as to render it impractical as a business venture. (*People ex rel. St. Albans-S. Corp.* v. *Connell,* 257 N. Y. 73.) Evidence was presented before the Board upon the second hearing sufficient to sustain the conclusion that these houses are obsolete and can no longer be sold or rented as single-family residences; that due to the character of the corner they cannot be reconstructed for residential purposes of any kind, except at prohibitive cost; that due to the location, the dimensions of the lot, and the particular effect of the setback lines upon the streets, the construction of stores or apartment houses would be impractical, and that they cannot be used for any purpose except that which the Board of Appeals has permitted. It is, of course, true that variation of the letter of the ordinance must be in harmony with its general purpose and intent, and not be such as to disrupt the character of the neighborhood which it is the object of the ordinance to preserve. That cannot happen in this case in view of the number of nonconforming uses that already exist in the same vicinity.

The petitioners, aggrieved by this decision of the Board, have cited *Matter of Levy* v. *Board of Standards & Appeals* (267 N. Y. 347) and similar cases to the effect that only where the burden of the general restriction creates a special hardship upon the particular owner can the granting of an exemption be allowed. Such a condition is fulfilled when premises have become obsolete for existing purposes and the buildings are worn out and neither land nor buildings can consistently with the exercise of reasonable business judgment be converted into any other conforming use, particularly where, as here, the testimony shows that part of the difficulty in making the property pay a return is the nature of the construction of the houses themselves and the effect of the setback lines in view of the special environment at the corner. That is enough to comply with the ruling in *Matter of Halpert* v. *Murdock* (249 App. Div. 777). The doctrine, that before an exception can be granted a special hardship must be shown to fall upon the particular

property, should not be applied so narrowly as to destroy the power of the Board to act where the grounds for action really exist. This was recognized by the Court of Appeals in *People ex rel. St. Albans-S. Corp.* v. *Connell* (*supra*), in an opinion *per* CRANE, J., in which the following statement is made (p. 78): " The referee states as a fact that the site in question is not suitable for the erection of a business building of any character whatever, and that a gasoline-selling station is the only available use to which the property in question can be put. Under such circumstances, is the relator to be deprived of all use of its property and any income therefrom by reason of this Zoning Resolution? " The opinion continues (p. 82): " Considering the nature of the relator's property in this case, and the finding of the referee, the ruling of the Board of Standards and Appeals [denying permission for a gasoline station] deprives the owner of any beneficial use of his property." To similar effect see *Matter of Eaton* v. *Sweeny* (257 N. Y. 176) ; *Matter of Butler* v. *Connell* (235 App. Div. 806) ; *Matter of Nagavan Realties, Inc.,* v. *Banzhaf* (149 Misc. 361). It should be noted that outside of industrial districts the Rochester Zoning Ordinance forbids gasoline filling stations everywhere in the city, save as exceptions shall be granted for that purpose by the Zoning Board of Appeals. To hold that the Board, in granting such exceptions, may not take into consideration the characteristics of the neighborhood on the basis that to do so would be engaging in municipal legislation would be equivalent to deciding that gasoline stations in residential or commercial districts in the city may never be permitted under the terms of the ordinance. Financial hardship to the owner is not always conclusive by itself. (*Matter of Joyce* v. *Dobson*, 255 App. Div. 348, 351.) In some cases it has been said that a direct attack upon the ordinance is necessary. (*Matter of Otto* v. *Steinhilber*, 282 N. Y. 71, 75.) Here there are enough factors peculiar to these houses and to this corner lot to render that procedure inappropriate. An application to the Zoning Board for an exception was the proper practice. The cases cited, holding that an exception to a zoning ordinance cannot be granted where the only basis is that it would enable the property owner to make a greater profit from the use of his property, are not in point. Neither is the inquiry to be directed to whether the property can be sold for a price commensurate with the assessed valuation or the amount invested therein. The aspect of the question presented here is whether these houses, having become obsolete as single-family residences, can be devoted to any other conforming use which holds a fair prospect of yielding any return commensurate with the financial

risk of undertaking the repairs or alterations necessary to adapt them to such purposes. Both homes are vacant. Even if the larger house could be rented at sixty dollars a month and the smaller at twenty-five dollars to thirty dollars a month, it would not demonstrate that after payment of taxes and maintenance costs and the setting aside of a reserve for vacancies and other contingencies enough profit would be left for the owners so as to take the question outside of the discretion of the Zoning Board of Appeals. Mr. Reilly, who testified to these rental figures, seems to have meant that there would be substantially no profit, since he stated that he thought the only possible use and the best use for the premises to be for gasoline-station purposes. Other expert witnesses testified in the owners' behalf whose evidence is sufficient to sustain the determination of the Board without regard to the testimony of Mr. Reilly. Thus, Emil Muller, a building contractor, testified that he considered the house fronting on Park avenue to be worth nothing as a building. He stated that it could not be remodeled on account of the construction of the chimneys and the necessity of building a fireproof stairway so as to conform to the city building regulations, and by reason of the age of the building and other complications. He testified that the house on Goodman street could be remodeled at a total cost of $12,528 so as to convert it into a house with four apartments. James Carmichael, a real estate expert, testified that the plans for remodeling presented by Mr. Muller were of the best type from a real estate standpoint, but that in his opinion there would be no financial return to the Field estate except upon the new money provided for the purpose of remodeling, and that this would be true even if the remodeling cost were but half as much as testified to by Mr. Muller. Mr. Carmichael agreed with Mr. Muller that the Park avenue house could not be remodeled, but disagreed with his statement that it had no value as a building. The Zoning Board was at liberty to accept the version of either of these witnesses upon that point. Carmichael himself stated that it would cost from $250 to $300 to make the Park avenue house habitable, and that, even so, the renting of it would be problematical. He stated that he thought if that sum were spent upon it and $750 spent upon the Goodman street house, it would show about $200 per annum net return on both houses provided that the owners succeeded in renting them to rooming-house operators, who would be the only type of tenant that he thought feasible. Even so, he stated that he did not take into consideration any money which might be required to be expended upon the heating and plumbing systems. It was properly within the discretion of the Zoning

Board to decide whether the possibilities of vacancy, the difficulty in obtaining rooming-house operators, the limited life of the buildings in any event, and the commercialization of the street corner were such as to warrant incurring the risk of outlaying over $1,000 new capital. Mr. Carmichael testified that if the properties were left as they were they " would show a very poor return and would constitute almost a liability to the owners." Attention has been called to the fact that Carmichael testified elsewhere that " without the possibility of a gasoline station permit, the fair market price of the property would be not to exceed $6,500.00." This statement is qualified by his subsequent statement that it would be hard to market the property at all, and that it would be improbable that a purchaser at $6,500 could be found. It was properly within the discretion of the Board to decide that the owners would not be justified in putting new money into these old buildings as a reasonable business venture for conforming purposes. The fact that other large houses in the neighborhood have been remodeled and converted successfully into multi-family dwellings does not establish that the Board abused its discretion in this case. There is testimony by real estate experts that the Field property is not susceptible of that kind of development by reason of its being a corner lot situated at a busy and noisy street intersection which is already mostly commercialized. If the Board adopted that view of the case, as it was at liberty to do, then the very circumstance that certain other properties in the district have been susceptible of being remodeled for other conforming uses, but that the one under consideration could not be dealt with in that manner, sets this property apart from those others and strengthens the conclusion that it is unique and subject to a special kind of hardship. It does not follow that the present houses could be razed and the property made into an apartment house merely because there is an apartment house on the opposite side of Goodman street. The latter building was constructed many years ago before the setback lines were imposed, and there is evidence on the basis of which the Board could have found that it would not be economical to construct such a building in that location today even regardless of the setback lines. The setback lines also interfere with the erection of stores upon Park avenue. It appears that Park avenue has few gasoline stations and that a gasoline station in this place would serve the public to advantage. So, at least, the Board could find.

Neither was the Board bound to deny permission for a gasoline station on the ground that the Field property is suitable for doctors' offices. There is testimony that other doctors have

their offices in the neighborhood, but none of these offices is situated upon a corner lot, and in most cases the doctors do not reside upon the premises, which is necessary in order to conform to the strict requirements of the ordinance. (Rochester Building Zone Ordinance, § 11, subd. A, ¶ (4), §§ 12–15.)

The sale of gasoline in this community has been drastically curtailed by Federal regulation. Materials necessary for the construction of this filling station, called for by the plans filed with the application, cannot be obtained on account of wartime priorities and allocations. No conflict arises between the Board's decision and these Federal regulations inasmuch as the consent granted is subordinate to any valid orders promulgated by executive authority to cope with the war emergency. The inability to obtain materials for construction of the station was undoubtedly known to the Zoning Board at the time when its permission was granted. The Board has proceeded upon the assumption that the emergency is temporary, and that this application, filed November 14, 1941, should be disposed of according to the principles which would have guided the Board in time of peace, knowing that the construction of the station will not be undertaken while the war is being fought. Underlying the Board's decision is the conclusion that the interests of the public and of property owners who may be affected will be served better by disposing presently of the issue as to whether this parcel of land shall be permitted to be used for a gasoline station when peace returns, thereby eliminating uncertainties and enabling interested parties to govern themselves accordingly. It is held by the court that to adopt this procedure was within the discretion of the Board. Consistently with this principle, however, a condition should be attached. Rochester is an important center for the manufacture of war materials and equipment for the Army and Navy. Since the decision by the Zoning Board it has become increasingly evident, sufficiently so as to be the subject of judicial notice, that due to the expansion of war production many more men and women must come to Rochester to engage in war work, and that they will require makeshift housing for the duration. Under these circumstances, and irrespective of the usual principles of city planning or of economics, buildings capable of housing employees in war industries should not be demolished during the war emergency, notwithstanding how ill-adapted they may be for general purposes. The interval during which these buildings may be required for war emergency housing is bound to be substantially the same as the period the premises must remain dormant as a filling station.

The court sustains the decision of the Zoning Board of Appeals, except that a condition is attached to the consent that neither of these houses shall be demolished before the end of hostilities in the present war. That will furnish an opportunity for some government division or agency to provide for their utilization, if necessary, for the purpose mentioned. This is in no sense a finding that the premises are reasonably susceptible of being devoted to a conforming use within the terms of the zoning ordinance, any more than it would be if the lot contained a barracks. The distinction is further manifested by the fact that the owners will in no case be required to supply the capital to make alterations to these structures to render them available as temporary quarters for war workers. On the other hand, some division or agency of government may decide to do so at public expense to aid in the war; the buildings ought to remain standing long enough to afford opportunity for that to happen. The power to impose reasonable conditions in making exemptions under the zoning ordinance is inherent in the Board, and, where warranted, it is inherent in the court upon review. This condition is temporary and is in harmony with the action of the Board, and ought to be imposed in the public interest.