Bernard S. Meyer, J.
By this motion petitioners seek to punish respondent Board of Appeals for contempt for failure to comply with the judgment of September 6, 1968, which annulled respondent’s determination denying petitioners a permit to use their premises as a private nursery school and directed respondent “to issue a permit to petitioners permitting them to operate a private nursery school subject to appropriate conditions concerning approval of the facilities by the New York State Department of Education An appeal from the judgment was dismissed (31 A D 2d 650) and leave to appeal to the Court of Appeals having been denied (23 N Y 2d 646), respondent on February 24, 1969 adopted a resolution direct *473 ing the Building Inspector to issue a special use permit, subject to a number of conditions and requirements and limited to a term of two years. Petitioners argue that respondent can impose only the conditions referred to in the September 6, 1968 judgment. While the court does not agree with that contention, it does find that respondent’s resolution exceeds its power. The motion to punish is denied without costs, but under the prayer for other and further relief certain of the conditions are declared invalid and the matter is remanded to the board for further proceedings not inconsistent herewith.
Determination of the issues presented by this motion turns on (1) the extent of the authority of the Board of Appeals to impose conditions upon a special exception permit, and (2) the effect of the prior proceedings and judgment upon the board’s authority. On the first question the court notes that, under subdivision 1 of section 175 of the Village Law, the Village Board of Trustees is authorized by ordinance to adopt zoning regulations which “ may provide that a board of appeals may determine and vary their application in harmony with the general purpose and intent, and in accordance with general or specific rules therein contained”, that section 179-b of the Village Law empowers a Board of Appeals to “ hear and decide all matters referred to it upon which it is required to pass under any such ordinance ”, and that under section 435 of the Building Zone Ordinance of the Village of Matinecock the decision and order of the Board of Appeals, in passing upon an application such as petitioners’, “ shall include appropriate and reasonable conditions and safeguards which the Board of Appeals itself deems necessary to impose in any case to assure continual conf ormance to all applicable requirements ’ ’. Though the board may have inherent power even in the absence of a specific ordinance provision to impose reasonable conditions (cf. Matter of Long Is. Lighting Co. v. Horn, 49 Misc 2d 717, 725, affd. 24 A D 2d 840, affd. 17 N Y 2d 652; Matter of Pearson v. Shoemaker, 25 Misc 2d 591; Matter of Hopkins v. Board of Appeals, 179 Misc. 325; 2 Rathkopf, Law of Zoning and Planning, 49-1; 1 Anderson, Zoning Law and Practice in New York State, § 18.43, with Matter of Oakwood Is. Yacht Club v. Board of Appeals, 32 Misc 2d 677), there can be no question about its right to do so in light of the above-quoted provisions (Matter of Ambrosio v. Zoning Bd. of Appeals, 196 Misc. 1005).
The right is not, however, unlimited. The conditions imposed cannot go beyond the ordinance, which is the source of the board’s power (Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 452, 455; Matter of Schlosser v. Michaelis, 18 *474 A D 2d 940; Matter of Vit-Al Bldg. Corp. v. Eccleston, 7 A D 2d 737; see People ex rel. Beinert v. Miller, 188 App. Div. 113). They must be directly related to and incidental to the proposed use of the property (Matter of Conmar Bldrs. v. Board of Appeals, 43 Misc 2d 577; Matter of Oakwood Is. Yacht Club v. Board of Appeals, 32 Misc 2d 677, supra; Matter of Pearson v. Shoemaker, 25 Misc 2d 591) and the conditions stated must be sufficiently clear and definite that the permittee and his neighbors are not left in doubt concerning the extent of the use permitted (Matter of Conmar Bldrs. v. Board of Appeals, supra; Matter of Pearson v. Shoemaker, supra). Moreover, the factual basis for the board’s determination to impose a condition must be stated, so that the court will have an intelligent basis for review (Matter of Pearson v. Shoemaker, supra.).
When conditions are imposed by a Board of Appeals after remand following a reversal of its earlier determination, the board’s authority may be limited by its own prior proceedings or by the remand judgment. Its own prior proceedings may limit its authority because res judicata is applicable to administrative determinations unless the nature of the power being exercised or the peculiar necessities of the particular case dictate otherwise (Matter of Evans v. Monaghan, 306 N. Y. 312, 324; Matter of Slattery v. Board of Estimate & Apportionment, 271 N. Y. 346, 351), and the rule against splitting causes of action will be invoked to proscribe piecemeal administrative determinations except under the same special circumstances. If the board’s earlier determination was based on less than all the grounds available to it, it could not have urged other reasons before the court in support of that determination in the prior article 78 proceeding (Matter of Aiosa, N. Y. L. J., March 31, 1966, p. 18, col. 5 [Pittoni, J.]), nor could the court in its review have gone beyond the grounds invoked by the board (Matter of Barry v. O’Connell, 303 N. Y. 46, 50; Matter of Rubel Corp. v. Murdock, 255 App. Div. 224, affd. 280 N. Y. 839; Matter of Blum v. D’Angelo, 15 A D 2d 909), for “ enumeration of the reasons is tantamount to definition, explanation and restriction ” (Matter of Steiert v. Epstein, 15 A D 2d 532). If it has thus waived grounds that it could have but did not urge in the earlier determination, it cannot after remand base conditions upon those grounds unless the remand judgment permits it to do so.
The rule concerning remand judgments is that ‘ ‘ Although an administrative agency is generally free, in a proper case, to exercise its full discretion anew when proceedings are remanded to it, it may not do so to the extent that an order *475 explicitly limits such discretion” (Matter of Quittner v. Herman, 15 A D 2d 68, 70, affd. 11 N Y 2d 800; see Federal Comm. v. Broadcasting Co., 309 U. S. 134; 1 N. Y. Jur., Administrative Law, p. 666, § 209; 2 Davis, Administrative Law Treatise, p. 624, § 18.11), for an agency is bound to honor the judicial decision made on review of its determination (Matter of Anderson v. Johnson Lighterage Co., 241 N. Y. 523; Matter of Jones v. Schenectady Boys Club, 276 App. Div. 879). That rule is, however, subject to the limitation that a court may not, in passing upon an agency order, exercise the discretion which the statute has vested in the agency (Matter of Nash v. Brooks, 276 N. Y. 75, 81), unless the agency has been given the opportunity to exercise its discretion and failed to do so (Matter of Levin v. Thornbury, 2 A D 2d 774). An order limiting the exercise of the agency’s discretion on remand may, therefore, be beyond the power of the court to make (see Matter of N. Y. State Elec. Corp. v. Public Serv. Comm. 260 N. Y. 32; Matter of Grade Crossings, 255 N. Y. 320; Matter of North Amer. Holding Corp. v. Murdock, 6 A D 2d 596, affd. 6 N Y 2d 902), as when a rate-making order is reversed because based upon insufficient evidence (Matter of Yonkers R.R. Co. v. Maltbie, 251 App. Div. 204), or when under the governing statute or ordinance additional steps involving the exercise of discretion are required of the agency after the decision which was annulled.
Courts may and often do authorize full reconsideration on remand (see, e.g., Matter of Gilbert v. Stevens, 284 App. Div. 1016), or, by imposing no limitation upon the agency’s discretion leave it free on reconsideration to exercise full discretion anew (Matter of Quittner v. Herman, 15 A D 2d 68, 70, affd. 11 N Y 2d 800). Clearly, the instant judgment is not of the former type. It would have been a judgment of the latter type had it stopped with the words “ subject to appropriate conditions ”. Do the modifying words “ concerning approval of the facilities by the New York State Department of Education ” leave the respondent board without authority to impose any other conditions 1 The court concludes not, because, the board’s prior determination having been to deny the permit, it has never had the opportunity to exercise its discretion under the ordinance. The judgment of September 6, 1968 can be construed as limiting reconsideration only by application of the rule of construction that the express mention of one thing implies the exclusion of others. The one thing mentioned in the judgment had been argued before the court; most of the others were not touched upon in the prior review proceeding. More importantly, however, an order which prevented the board *476 from exercising discretion with respect to matters not previously-considered would be, as noted above, beyond the power of the court to make. Absent express language in the September 6, 1968 judgment permitting of no other construction, that judgment should not be so construed.
Although the board, therefore, was not limited to conditions concerning approval of facilities by the Department of Education, the conditions imposed by the resolution of February 24, 1969, can stand only if they do not violate any of the other rules discussed above. Since no findings were included in the resolution, the matter could properly be remanded without further discussion to the board for the making of findings. However, petitioners’ application has now been more than three years in process, and since some of the conditions are wholly unauthorized and, therefore, would be stricken no matter what finding was made, the court will pass upon the various conditions imposed before remanding to the board for findings as indicated below.
Paragraph 2(a), which relates to the age of the students and prohibits instruction for grades kindergarten and above, 2(b), which relates to the total number of students, and the second sentence of 2(c), which fixes the hours of operation of the school, are invalid, because they apply to the details of the operation of the business and not to the zoning use of the premises (Matter of Schlosser v. Michaelis, 18 A D 2d 940; Matter of Oakwood Is. Yacht Club v. Board of Appeals, 32 Misc 2d 677; Matter of De Ville Homes v. Michaelis, 201 N. Y. S. 2d 129). The first sentence of paragraph 2(c) limits operation of the nursery school to September 1 through June 30. The definition of “ School, Private ” in section 220 of the ordinance includes a like limitation and under section 421.1(9) only private schools as defined in section 220 can be granted a special exception permit. This provision is, therefore, valid. Paragraph 2(d) prohibits use of the premises for any other purpose than a nursery school. It is consistent with the present ordinance, though unnecessary, for in light of the definitions ,of “Dwelling” and “Dwelling, 1-family” in section 220 of the ordinance there is no other permitted use that could be conducted on the premises while it is being operated as a nursery school.
Paragraph 3'(a) requires alteration of the premises to conform to the requirements of all governmental bodies having jurisdiction. It purports to be authorized by section 435 of the ordinance, but the reference therein to “ all applicable requirements ” must be construed to mean all applicable zoning *477 requirements, for it is not a proper function of a Board of Zoning Appeals to police the enforcement of statutes and ordinances other than the zoning statutes and ordinances under which it operates. If petitioners fail to alter the building as required by other governmental bodies those bodies, it may be presumed, will prohibit petitioners ’ further operation of the nursery school. Paragraphs 3(b) (i) and (ii) and the first sentence of 3(b)'(iii) are also invalid for the same reason, and for the further reasons that they relate to detail of operation rather than zoning use and that, though sections 441.02 and 441.03 contain minimum occupancy figures for secondary schools and above, no such provision for nursery schools is set forth in the ordinance. The second and third sentences of 3(b) (iii) define one accessory use customarily incidental to a private school operation and are, therefore, authorized by section 421.01 (9) of the ordinance. The words “only” and “full time” must, however, be stricken from the second sentence and there must be inserted in that sentence after the words “ occupied by” the words “ applications or ”, Whether the third floor is used for nursery school purposes, whether a caretaker is a full-time employee, whether applicants reside on the premises in order to act as their own caretaker, are all details of operation beyond the competence of the board.
The first six lines of paragraph 3(c) require the filing of a topographic site plan. The fifth ground of decision denying the original application was based in part on the failure to file such a plan (par. V [1] of decision of April 30, 1968) and on review that ground was held to be without merit. In light of that fact and of the omission from the judgment of September 6, 1968 of any provision authorizing reconsideration of that issue by the board, the board may not condition the permit upon the filing of such a plan.
Paragraph 3(c)(1) requires the installation in two places of a chain link fence 6 feet high, 10 feet within the boundary line of the premises, with a double row of evergreens planted outside the fence in the buffer area. While such conditions may, it appears, be sustained when imposed by a Town Board as a condition of rezoning (Church v. Town of Islip, 8 N Y 2d 254), respondent board exercises administrative not legislative powers. Petitioners show that the cost of such fences and planting would be $15,000 and it may well be that the condition is unreasonable for that reason alone. It is not, however, necessary to decide that question for section 432.04 of the ordinance authorizes the board to require buffer planting, walls and fences only “ where necessary, to protect adjoining residen *478 tial properties ”. Clearly nursery school children are neither so abhorrent to look at nor so dangerous to adjoining properties as to require fencing and planting to “protect ” against them. The condition is unauthorized, because beyond the ordinance. Furthermore, it would appear to be foreclosed by the decision in the prior review proceeding, based as it was in part on the fact that a prior public school use of the premises had not been shown to be detrimental to neighboring property and that the change from public to private directorship was not likely to cause damage.
Paragraph 3(c) (ii) insofar as it mandates that “no light source on the premises shall be visible beyond the boundaries of the premises ” goes beyond the provision of section 432.05 of the ordinance that “ Exterior lighting shall be so installed and arranged as to reflect light away from adjoining streets and to prevent any nuisance to property in adjoining residence districts ” (emphasis supplied). A condition in the language of the ordinance would be permissible; the provision under discussion is not. Paragraph 3(c) (iii) and the second sentence of 3(c) (iv) are authorized by section 441.07 of the ordinance, but nothing in the ordinance authorizes the first sentence of 3(c) (iv) or the provisions of 3(c) (v) or (vi).
Paragraph 3(d) deals with the approval of the New York State Department of Education. The definition of “ School, Private ” in section 220 of the ordinance limits the term to a school “ either chartered by the Regents of the University of the State of New York or approved by and under the supervision of the New York State Department of Education ”, and the judgment of September 6, 1968 directed issuance of a permit “ subject to appropriate conditions concerning approval of the facilities by the New York State Department of Education.” The filing with the village attorney of a copy of the application made to the department and of the certificate of registration when received is, therefore, appropriate, as is the provision of paragraph 3(f) (ii) that the permit shall become null and void upon suspension, revocation or expiration of the department certificate. The difficulties with the requirement as written, however, are (1) it spells out what the department certificate must state, which is a matter for the department not the board to specify, the board’s only authority under the ordinance being to require evidence that the school has in fact been approved by the department; (2) when read together with the provision at the beginning of paragraph 3 that ‘ ‘ there shall be compliance with the following conditions before the premises shall be used”, it requires filing of the certificate *479 of registration before nse, which is inconsistent with its recognition that£ ‘ such a certificate # * * may not be obtained from the State Education Department until after the school is in operation ” and is unreasonable because until the use permit is granted petitioners cannot safely make expenditures to meet the conditions imposed (see Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 446); (3) the provision that operation shall cease if the certificate of registration has not been obtained within six months after application (a) is unsupported by any evidence that the department usually acts within such a period, (b) fails to recognize that such a school is conducted, and its personnel employed, on a September 1 through June 30 basis, and that cessation at the end of six months rather than at the end of the term may well be unreasonable. On remand, the board should receive data concerning both points, make appropriate findings, and may then revise the condition in a manner not inconsistent with the foregoing.
Paragraph 3(e) provides that “ The term of the permit herein authorized shall expire two years from the date of its issuance ’ ’. Section 433.02 of the ordinance authorizes the board to “ provide that said permit shall be temporary and fix the term thereof ”. There is, however, neither record nor findings to support the conclusion that a term of two years is reasonable, nor to indicate the basis on which the board concluded that the permit should be temporary rather than permanent. Respondent’s answering affidavit suggests that the reason for making the permit temporary was ‘ ‘ to insure that petitioners ’ school is and will be a bona fide nursery school operation which complies with the standards of the New York State Department of Education”, but as already noted that is a function of the Department of Education and not of the village. In deciding to limit the life of the permit at all and in fixing the period during which the use will be allowed to continue, the board must strike a reasonable balance between social harm and private injury (see Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 562). Its action will be sustained if its findings provide a reasonable basis for the conclusion reached and are supported by evidence in the record. However, until the court is informed what the board considered the social harm involved to be and until the board has taken evidence concerning petitioners’ investment in the nursery school operation of the property (as distinct from their investment in the property itself) and the annual return to be expected from such an operation, there is no basis on which the court can conclude that limitation of the permit to two years is rea *480 sonable. Clearly the period must be long enough to afford petitioners the opportunity of amortizing their nursery school investment over the period of the permit (see Matter of New York Life Ins. Co. v. Foley, 13 A D 2d 768; Rand v. City of New York, 3 Misc 2d 769; Houdaille Constr. Materials v. Board of Adjustment, 92 N. J. Super. 293; cf. People ex rel. St. Albans-Springfield Corp. v. Connell, 257 N. Y. 73). On remand, the board must hold a hearing on this issue, and make findings and conclusions in support of any term limitation imposed.
Paragraph 3(f) declares the conditions upon which the permit “ shall become null and void ”. Since section 438 provides only that a permit ‘ ‘ may be revoked by the Building Inspector if it is found and determined that there has been a failure of compliance ”, the words, “ shall become null and void ” are beyond the competence of the board and invalid. Moreover, paragraph 3(f) (i) is invalid because it attempts to escalate the provision of section 433.01 (i) of the ordinance that the applicant “ shall be the owner * * * at the time the application is made ” into a condition that the permit shall become void if petitioners convey all or any part of the property. It would, perhaps, be enough to note that the procedural provision of the ordinance cannot reasonably be read as authorizing the substantive limitation imposed in its name. The court notes further, however, that “ such a restriction is invalid because zoning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises by whom such is to be exercised ” (Vlahos v. Little Boar’s Head Dist., 101 N. H. 460, 463; accord: Olevson v. Zoning Bd. of Rev., 71 R. I. 303; Fernald Appeal, 17 Pa. D. & C. 2d 291; see Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 500; Matter of Feneck v. Murdock, 16 Misc 2d 789, 792; Strine, The Use of Conditions in Land-Use Control, 67 Dickinson L. Rev. 109, 133; Note 12 Syracuse L. Rev. 230, 237).
Paragraph 3(f) (ii) has been considered above. Subject to correction of the words “ shall become null and void ” as discussed above, it is valid. Paragraph 3(f) (iii), however, goes too far in nullifying the permit should petitioners fail to comply with the standards and requirements of the New York State Department of Education. As noted above, it is not the function of the village to police enforcement of the Education Law. So long as petitioners ’ school is registered, it complies with the zoning ordinance; petitioners cannot be subjected at the hands of the village to a second master with respect to Education Department standards and requirements. The balance of para *481 graph 3(f) (iii) and paragraph 3(f) (iv) are, subject to correction of the words “shall become null and void”, within the authorizations of sections 438 and 421.01(9) (which expressly prohibits camps), respectively, and, therefore, are valid.
The facts, which respondent board has not denied, that the resolution of February 24, 1969, was adopted at a meeting of which petitioners were given no notice, that petitioners had no opportunity to be heard on the conditions adopted and that no findings were made, and the extent to which some ordinance provisions have been distorted by the board in adopting conditions, raise a serious question concerning the good faith of the board, particularly when the long-drawn-out history of this litigation is considered. Nonetheless, in light of the law discussed at the beginning of this opinion it cannot be said that the judgment of September 6, 1968 sufficiently excluded the imposition of the conditions adopted to furnish a basis for holding the board in contempt (Sternberg v. Zaretsky, 20 A D 2d 795; Glassman v. Glassman, 20 A D 2d 563; Matter of Carlson v. Podeyn, 12 A D 2d 810). The motion to the extent that it seeks to punish for contempt is, therefore, denied. The judgment will, however, remand the matter to the board with directions to hold a hearing not later than 20 days after service upon it or its attorneys of a copy of the judgment and, to adopt conditions not inconsistent with this opinion, together with findings of fact in support thereof, by resolution adopted not later than 21 days after the date fixed for hearing, unless as to the latter period petitioners consent to an. extension of time or further direction is sóught from this court.