In the Matter of SUMMIT SCHOOL et al., Appellants, v HELEN NEUGENT et al., Constituting the Zoning Board of Appeals of the Village of Upper Nyack et al., Respondents.

Second Department, August 24, 1981

APPEARANCES OF COUNSEL

*Harvey N. Goldstein* for Summit School and another, appellants.

*Leibman & Schreier (Joel M. Leifer* of counsel), for 346 North Broadway Associates, appellant.

*Schwartz, Kobb, Scheinert, Hamerman & Johnson (Joseph A. Hamerman* of counsel), for respondents.

OPINION OF THE COURT

GIBBONS, J.

In 1973 Gail-Stan Corporation, predecessor in interest of the petitioner 346 Broadway Associates, on behalf of itself, as the prospective vendee of the subject real property, and for and with the active participation of the petitioner Summit School, its prospective lessee, applied to the respondent zoning board of appeals for a variance and a special permit to use the subject property, located in the Village of Upper Nyack, as a private school for handicapped children with learning disabilities.

The petitioner Summit School was duly chartered by the Board of Regents of the State of New York "to establish, conduct, operate and maintain a private school for the education of brain injured, emotionally disturbed and physically handicapped children of elementary and secondary school ages." The petitioner Summit Children's Center, Inc., is a not-for-profit corporation which operates a residence center for the education of physically handicapped, brain damaged and emotionally disturbed children of elementary and secondary school ages on a portion of the property, and in conjunction with the Summit School.

The subject property is situated in an R-2 zoning district, which permits private and public schools. However, under the village zoning ordinance, a private school may not be erected in a residential district without a special permit issued by the board of appeals (Zoning Ordinance of Village of Upper Nyack, § 14A).

After hearings were held, the board of appeals voted to grant "a VARIANCE from the definition of 'School, Private' as set forth in * * * the Zoning Ordinance" and a special

permit to the Summit School to use the property as a year-round private school for day and/or resident students with learning disabilities. The variance and special permit were granted subject to 14 "conditions subsequent," therein designated from A to N. The board also declared that it could revoke the variance and special permit if the conditions were violated. The petitioners Summit School and Gail-Stan Corporation agreed in writing to comply with the conditions.

In July, 1976 petitioners sought and obtained a modification of the special permit and variance, to permit the use for school purposes of another building on the premises.

In July, 1978 the zoning board advised Summit School and Gail-Stan Corporation that a hearing was to be held to determine whether the conditions of the special permit and variance had been violated. In November, 1978, after these hearings were concluded, the zoning board found that some of the "conditions subsequent" had been violated and, thereupon, revoked the variance and special permit.

Thereafter, petitioners brought this proceeding, challenging the board's determination and requesting declaratory and injunctive relief.

After annulling the determination revoking the variance and special permit upon the ground that the board of appeals was without jurisdiction to render the same since the exclusive remedy to prevent zoning violations and unlawful uses was by appropriate actions at law or in equity under section 7-714 of the Village Law and section 18:2 of the village's zoning ordinance, Special Term found, *inter alia*, that the petitioners had waived their right to object to the conditions and upheld the constitutionality of section 14A of the village zoning ordinance.

The following three questions are presented for resolution on this appeal: (1) may a municipality enact a zoning ordinance authorizing it to impose conditions in granting a variance or special use permit to a petitioner seeking to conduct a private school to teach handicapped children with learning disabilities; (2) what is the legitimate scope of such conditions; and (3) may such private school be precluded from later attacking such conditions upon constitu-

tional or other grounds by reason its waiver to do so contained in its prior agreements to accept them?

At the outset, it should be noted that in *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton* (1 NY2d 508, 522), it was held that "a zoning ordinance may not *wholly exclude* a church or synagogue from any residential district" and "[a]n ordinance will also be stricken if it attempts to exclude private or parochial schools from any residential area where public schools are permitted". The court also held (p 526): "That is not to say that *appropriate restrictions* may never be imposed with respect to a church and school and accessory uses, nor is it to say that under no circumstances may they ever be excluded from designated areas." (Emphasis added.) While there is no question that an educational use is, by its very nature, in the furtherance of public morals and general welfare *(Matter of Wiltwyck School for Boys v Hill*, 11 NY2d 182; *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, supra)*, municipalities may place reasonable zoning restrictions upon such uses carried on by private educational institutions *(Matter of New York Inst. of Technology v Le Boutillier*, 33 NY2d 125). Thus, it is clear that, as a general propositon of law, a municipality may properly enact a zoning ordinance authorizing it to impose reasonable conditions in granting a special use permit. Section 14A of the zoning ordinance herein constitutes a permissible legislative expression of the board of appeals right to exercise that power, and Special Term correctly concluded that it was not unconstitutional.

In determining what restrictions may properly be attached to a variance and special use permit for a private school use, as posed by the second question above, the inquiry, of necessity, must turn, in general, to the nature of the zoning power, and, in particular, to the extent to which it may be exercised in relation to a private school operation. When does the legitimate concern of those charged with enforcing zoning ordinances as a measure of municipal control over the *use* of real property for private school purposes end, and at what point do their actions impermissibly impinge on the details of the teaching operation of a school facility?

The power of a board of appeals to impose conditions in granting a special permit is not unlimited. The conditions so established must relate directly to, and be incidental to, the proposed *use* of the real property and not to the manner of the operation of the particular enterprise conducted on the premises which are the subject of the special permit *(Matter of Community Synagogue v Bates,* 1 NY2d 445; *Matter of Schlosser v Michaelis,* 18 AD2d 940; *Matter of Oakwood Is. Yacht Club v Board of Appeals of City New Rochelle,* 32 Misc 2d 677; *Matter of Long Is. Light. Co. v Voehl,* 27 Misc 2d 943, affd 15 AD2d 512; *Matter of De Ville Homes v Michaelis,* 201 NYS2d 129; *Bernstein v Board of Appeals of Vil. of Matinecock,* 60 Misc 2d 470, app dsmd 31 AD2d 650, mot for lv to app den 23 NY2d 646).

Where, as here, the special permit contains specific conditions which have been the subject matter of an agreement between the board of appeals and the applicant, such conditions must also pertain exclusively to the *zoning use* of the land and not to the *details of the operation* of the business to be thereon conducted, which, in this case, concerns the teaching of handicapped children with learning disabilities, pursuant to a constitutional mandate imposed upon the State to "provide for the maintenance and support of a system of free common schools, wherein *all* the children of this state may be educated." (NY Const, art XI, § 1; emphasis added.)

We are dealing here with a private school teaching enterprise, authorized and operated under contract to carry out the State's obligation to provide education for such handicapped children with learning disabilities, pursuant to article 89 (§§ 4401-4409) of the Education Law, and it would not only be contrary to "the strong public policy of the State which favors the education of *all children, however handicapped*" *(Rogers v Association for Help of Retarded Children,* 308 NY 126, 132, emphasis added; *Matter of Wiltwyck School for Boys v Hill,* 11 NY2d 182, *supra),* and in excess of the legislative power conferred upon a municipality, to impose, as a condition of a special use permit for a private school, the details of the operation of the educational processes of the institution, and also equally

improper and beyond its power to impose such conditions, as here, by an agreement with the applicant.

To the extent that appellants may be properly precluded by a prior waiver of a statutory or constitutional right to challenge the official action of the municipality in relation to zoning, such waiver is ineffectual to foreclose such attack where the right concerns a matter of public policy (see *Brous v Town of Hempstead*, 272 App Div 31).

By their agreement, the appellants have effectively waived all objections to the "conditions subsequent", except those under which the municipality sought to assume control over some aspects of the educational process of the school, an effort for which it was neither professionally equipped nor legally authorized to undertake.

Those "conditions subsequent" which may intrude upon the educational processes of the appellants, as opposed to their use of real property, are contrary to public policy and may not be the subject matter of a waiver.

Our inquiry in now focused upon many clauses of the "conditions subsequent" designated D, which, for the reasons hereinbelow stated, suffer such infirmity. It is there provided as follows: "D. Students will be under 18 years of age and will be limited to those with so-called 'Learning Disabilities'; regular educational classes will be held during the months of September through June, inclusive, on Mondays through Fridays, inclusive, from approximately 9:00 A.M. to approximately 4:00 P.M.; any athletic or recreational activities shall be of secondary importance and will be held either indoors, or sufficiently distant from the north and south boundaries of the property, both, to the end that neighboring owners will not, be disturbed by loud noise or otherwise; no summer camp or vacation activities of any kind will be held or maintained at any time on the premises; any activities in July and August shall be only as a so-called 'summer school session' and shall conform to the same general educational and recreational requirements as during the regular school session in the other months; Summit School shall operate solely as a Non-Profit, Non-Sectarian educational institution, with an educational treatment program for children with 'learning disabilities'; the number

of resident and/or non-resident students shall be limited to the number certified in writing as reasonable, from time to time, by the Building Inspector, except that, in no event, shall the number of students, non-resident and resident, exceed 125; the ratio of professional (including faculty) and para-professional staff members, who shall be on the school premises at all times, shall be not less than one (1) staff member for every 10 students; no activities other than the above, commercial or otherwise, shall be conducted on the premises; student activities, so far as possible, shall be confined to the premises; students shall be suitably supervised at all times; if it becomes necessary for resident students to leave the premises, they shall be suitably supervised either on the public streets or on the Hudson River; no signs or other identifying material will be displayed on the premises, except as permitted by the Zoning Ordinance."

That part of the first clause, limiting the students to those under 18 years "with so-called 'Learning Disabilities'", does violence to subdivision 1 of section 4401 and section 4402 (subd 1, par a) of the Education Law, which provide for education to a handicapped child under the age of 21 years. It further presumes to limit the extent of the handicapping condition of the children who may be taught in the school to those with learning disabilities and, thereby, usurps the power confered on the local school district, under the guidelines of section 4402 (subd 1, par b, cl [1]) of the Education Law, to make the determination concerning the nature and extent of the handicapping condition of the child who shall receive such private school instruction under a contract with private schools within the State under section 4401 (subd 2, pars e, g) of the Education Law.

To the extent that the second and third clauses purport to control the times of the day when educational classes will be permitted to be conducted and provide that "any athletic or recreational activities shall be of secondary importance and will be held either indoors, or sufficiently distant" from the boundaries of the school property, they represent an improper attempt to control the educational process of the school (see *Bernstein v Board of Appeals of Vil. of Matinecock*, 60 Misc 2d 470, *supra*).

The fourth and fifth clauses, which require that the school involve itself in "no summer camp or vacation activities of any kind", and that the activities of the school "in July and August shall be only as a so-called 'summer school session' and shall conform to the same general educational and recreational requirements as during the regular school session in the other months", represent a wholly unauthorized attempt to intrude upon the teaching functions of the school. In this connection it should be noted that in *Rorie v Woodmere Academy* (52 NY2d 200), the Court of Appeals held that under certain circumstances camp activities could be conducted as a legitimate educational enterprise during the summer session of a school, notwithstanding that it was located in a residential zone. The court there held as follows (pp 205-206): "The fact that some of the activities carried on may also be carried on by a day camp, or for insurance or public health purposes may be classifiable as day camp activities, is not determinative, nor is it decisive that during the same summer period the plant is being or could be used for a summer school in the traditional sense (i.e., a school devoted entirely to academic subjects). What is essential is that the educational component of the program, the staff and the plant be of sufficient size to warrant the conclusion that the program involves a good faith effort on the part of the private school to accomplish serious educational aims and is not simply a fun and games recreational program in disguise."

If, in conjunction with the operation of the school, it is deemed by those charged with its management that it would enhance the training and education of the students by a combination of academic and camp activities by trained members of its faculty or others with similar educational qualifications, an effort by this condition to restrict such activities is wholly unauthorized and constitutes an interference with the teaching function. As stated in *Incorporated Vil. of Brookville v Paulgene Realty Corp.* (24 Misc 2d 790, 792, affd 14 AD2d 575, affd 11 NY2d 672): "Supervised physical training and instruction by competent personnel is nonetheless educational because it trains the body as well as the mind."

To the extent that the sixth clause purports to limit the handicapped condition of the students who may be educated in the school to those with learning disabilities, it suffers from the same deficiency as contained in the first clause. The reference in the same clause that the school shall "operate solely as a Non-Profit, Non-Sectarian educational institution," is likewise invalid for the reason that it bears no rational relationship to the manner of how land may be used and is not an authorized basis for a condition to be imposed in granting a special use permit (see *Incorporated Vil. of Brookville v Paulgene Realty Corp., supra,* p 794).

The seventh clause of paragraph D of the "conditions subsequent" requires that: "the number of resident and/or non-resident students shall be limited to the number certified in writing as reasonable, from time to time, by the Building Inspector, except that, in no event, shall the number of students, non-resident and resident, exceed 125". Provisions in a special use permit which "[relate] to the total number of students * * * are invalid, because they apply to the details of the operation of the business and not to the zoning use of the premises" *(Bernstein v Board of Appeals of Vil. of Matinecock,* 60 Misc 2d 470, 476, *supra,* and cases cited therein; *Incorporated Vil. of Brookville v Paulgene Realty Corp., supra,* p 795). There is no indication in the record that the number of students was limited for reasons pertaining to safety.

The eighth clause requires that "the ratio of professional (including faculty) and para-professional staff members, who shall be on the school premises at all times, shall be not less that one (1) staff member for every 10 students". This restriction is clearly invalid as it relates to the details of operating a school and not to the zoning use of the premises. The power to impose such regulations lies with the State Department of Education and not with the local zoning authority.

The ninth clause of paragraph D of the "conditions subsequent" requires that "no activities other than the above, commercial or otherwise, shall be conducted on the premises." This condition is valid as consistent with sec-

tion 16:1 of the zoning ordinance, which states that "[i]t shall be unlawful for any person * * * to change the permitted land use, without first obtaining * * * the permits provided for by this Section 16." Since this condition is attached in accordance with the power of the zoning board of appeals to regulate those areas of activity narrowly set out in the zoning ordinance, the condition is valid.

The tenth, eleventh and twelfth clauses provide: "student activities, so far as possible, shall be confined to the premises; students shall be suitably supervised at all times; if it becomes necessary for resident students to leave the premises, they shall be suitably supervised either on the public streets or on the Hudson River". The imposition of these conditions is invalid since they relate to the details of operating a school and not to the zoning use of the premises. Furthermore, the conditions relating to student supervision are invalid because they attempt to regulate the persons who own or operate the premises and not the land itself and its use (see *Matter of Dexter v Town Bd. of Town of Gates*, 36 NY2d 102, 105).

The thirteenth clause states that "no signs or other identifying material will be displayed on the premises, except as permitted by the Zoning Ordinance." The imposition of this condition on the use of the land is valid since the zoning ordinance authorizes regulation of signs in business and residential districts in section 6:2 and the condition is impliedly limited by its language to the provisions of that section.

For the above reasons, the judgment should be modified accordingly.

TITONE, J. P., GULOTTA and MARGETT, JJ., concur.

Judgment of the Supreme Court, Rockland County, dated August 27, 1979, modified, on the law (1) by deleting the second, third and fifth decretal paragraphs and (2) by substituting therefor provisions (a) declaring the conditions set forth in the first, third, fourth, fifth, sixth, seventh, eighth, tenth, eleventh and twelfth clauses of paragraph D of the "conditions subsequent" contained in the special permit and variance, and so much of the condition in the second clause thereof as limits the times of day when educational

classes may be conducted, to be invalid and unenforceable as an attempt to control the details of the operation of a private school and, therefore, contrary to public policy of the State of New York and not the proper subject matter of waiver by the petitioners, (b) enjoining the respondents from enforcing said conditions by civil or criminal proceedings, and (c) declaring the remaining contested conditions to be valid and enforceable. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.