■ TOWN OF HUNTINGTON, Appellant, v. ANTHONY SUDANO, Doing Business as SUNDOWN KENNELS, Respondent.— In an action to enjoin defendant from operating a commercial dog kennel in a residence zone, plaintiff appeals from a judgment of the Supreme Court, Suffolk County, entered July 18, 1972 after a nonjury trial, in favor of defendant. Judgment reversed, on the law and the facts, with costs, and case remitted to the trial court for the making and entry of a judgment in favor of plaintiff permanently enjoining defendant from operating a commercial dog kennel having more than 10 dogs. The Zoning Board of Appeals of the Town of Huntington granted a special exception in 1952 to defendant's immediate predecessor in title to operate a dog kennel on the following terms: " for the purpose of training dogs, limited to a maximum of ten (10) dogs at any time; it is understood that the training of the dogs is for the purpose of leading the blind." Defendant and his wife purchased the property in 1969. At the trial he testified that he has harbored

as many as 45 dogs on the premises at one time. Special Term held, however, that the Zoning Board of Appeals could not lawfully impose a condition limiting the number of dogs or requiring that the training of dogs be confined to leading the blind and that, in addition, the board could not place limitations on the operation of a business, but only on the use of the premises. With this holding we disagree. The Zoning Board of Appeals, though not expressly granted power by the ordinance to limit the number of dogs housed on the premises, possessed the inherent authority to impose reasonable conditions in sanctioning the special exception (*Matter of Long Is. Light. Co.* v. *Horn,* 49 Misc 2d 717, affd. 17 N Y 2d 652; *Matter of Pearson* v. *Shoemaker,* 25 Misc 2d 591; 2 Rathkopf, Law of Zoning and Planning, 49 1; 2 Anderson, New York Zoning Law and Practice [2d ed.], § 18.43). Moreover, the applicable ordinance (article IX, § 2) provided that the board could impose appropriate conditions and safeguards. This included, *inter alia,* such conditions as would reasonably safeguard the neighborhood character and surrounding property values (art. IX, § 6, subd. C). In our opinion, the limit on the number of dogs permitted not only constituted a reasonable safeguard consonant with the exercise of power under the ordinance in effect in 1952, but it also minimized the effects of the exception on other property in the neighborhood, in keeping with one of the standards laid down in the ordinance subsequently enacted in 1969 (Code of the Town of Huntington, § 62–17.5) which, for all intents and purposes, is but an extension of the standards laid down in the prior ordinance and an implementation of its spirit and objectives. Nor do we believe that the board acted in excess of its power because the condition incidentally affected the operation of a business. The regulation of a kennel traditionally has been effectuated by a zoning ordinance; and the regulation may include the limitation on the number and age of dogs permitted (1 Anderson, New York Zoning Law and Practice [2d ed.], § 11.04; cf. *People* v. *Bannett,* 40 Misc 2d 296, affd. 14 N Y 2d 493; *Barkmann* v. *Town of Hempstead,* 268 App. Div. 785, affd. 294 N. Y. 805). This case is unlike *Matter of Schlosser* v. *Michaelis* (18 A D 2d 940), where the board attempted to restrict the number of employees and other details of the operation of a wholesale florist. Here, the number of dogs allowed is directly allied to the use and enjoyment of neighboring land. However, we consider the limitation in the special exception to the training of dogs for the blind as without the power of the board; that limitation does not bear on the use of the land, but rather on the operation of the business and hence is impermissible (cf. Ann. 99 ALR 2d 227). Finally, we note that defendant must have recognized that the kennel, located within a residence district, was required to be authorized by a special exception — a special exception granted some 17 years before and enjoyed without demurrer by the owner from whom he obtained title. Under these circumstances, we see no equitable consideration which we should invoke in his favor to prevent enforcement of the conditions of the special exception to the extent indicated. Rabin, P. J., Hopkins and Munder, JJ., concur. Shapiro, J., dissents and votes to affirm, with the following memorandum, in which Martuscello, J., concurs: In September, 1969 defendant and his wife purchased premises containing a home and dog kennel in the plaintiff town and continued to operate the kennel as a business enterprise. In October, 1971 the town commenced this action to enjoin defendant from operating the kennel for any purpose other than to train no more than 10 dogs at any time as seeing-eye dogs, claiming (1) that his predecessors in title, who in 1952 had applied for permission to operate a dog kennel on the premises, had, on November 7, 1952, been granted permission (by way of a special exception) to train "a

maximum of ten (10) dogs at any time" with the understanding "that the training of the dogs is for the purpose of leading the blind" and (2) that defendant was not complying with this limitation. Concededly defendant was boarding more than 10 dogs at a time and was not training them to lead the blind. After finding that defendant had more than 10 dogs in the kennels, that various neighbors had complained about the noise emanating from the premises and that defendant had purchased the premises under the belief that they had been used and operated as a dog kennel for the past 19 years, Special Term decided that the Zoning Board of Appeals had exceeded its authority in imposing the specified restrictions since there was then (in 1952) no provision in the town's Building Zone Ordinance authorizing the imposition of such a limitation on the grant of a permitted special exception. The trial court, citing *Matter of Schlosser* v. *Michaelis* (18 A D 2d 940), also held that the Zoning Board of Appeals had no power to impose such limiting conditions because they dealt with details of the operation of the business to be conducted at the premises and not with a zoning use of the premises. The appellant town relied on section 62–17.5 of the Code of the Town of Huntington as its statutory authority for imposing on defendant's predecessor the condition which it is now seeking to have enforced, but that code provision, which specifically empowered the board of appeals to impose, upon its approval of any special exception, such conditions or restrictions as were deemed necessary to minimize the effects of the use upon other property in the neighborhood and to assure a harmonious arrangement of uses to implement the spirit and objectives of the ordinance, was not adopted until 1969 and could not, therefore, as the trial court correctly ruled, validate a condition imposed in 1952. Section 2 of article IX of the Zoning Ordinance, which was in effect in 1952\*, authorized the Board of Appeals to "determine and vary the application of the regulations herein established in harmony with their general purpose and intent" and to grant a permit "subject to appropriate conditions and safeguards". Section 6 of article IX limited that power by providing that the board may not grant a permit for any special exception unless it first determined that it (a) was reasonably necessary for the public health or general welfare and interest, (b) was appropriately located with respect to transportation, water supply, fire and police protection, waste disposal, etc., (c) reasonably safeguarded the neighborhood character and surrounding property and (d) did not cause traffic congestion or hazards. The question therefore is whether under section 2 the conditions imposed on defendant's predecessor were "appropriate conditions and safeguards." In my opinion, neither the limitation of the dog tenancy of the kennel to 10 and the function of the kennel to train seeing-eye dogs can be justified under any of the four standards set forth in section 6. They are clearly not related to standards (b) and (d) and it can hardly be argued that such a limitation can be justified as needed to protect the public health or general welfare or to safeguard the character of the neighborhood and surrounding property values. After all, the same use had persisted for some 17 years before defendant bought the premises, a use described by defendant's predecessor as "operating a commercial dog kennel on the premises" while he resided there from March of 1953. His "primary and almost exclusive use of the kennel was for commercial purposes," includ-

---

\* The majority sloughs off any differences between this zoning ordinance and the one adopted in 1969 by saying that the latter to "all intents and purposes is but an extension of the standards laid down in its prior ordinance and an implementation of its spirit and objectives." It is an extension, it is true, but only in the sense that it is far more comprehensive.

ing importing, training and raising dogs to be sold on the premises and advertising his kennel as a place for raising, training and boarding dogs. There is nothing in the record to contradict his sworn assertion that his operation of the kennel was never interfered with over the years he had occupied the premises. There is no proof either of complaints by owners of property in the area during this period or of any adverse effect of the kennel on the nature of the neighborhood or on surrounding property values. Clearly, as the majority agrees, the limitation that the kennel be used for training dogs for the blind has no rational relationship to the grant of the special exception for use of the premises as a kennel because it makes no difference, with respect to zoning purposes, whether the kennel is used only for one form of training or for sale, breeding, boarding, etc., of dogs. (In any case, whether the training of dogs is for the laudable purpose of helping the blind or for other possibly less laudable purposes would have no rational relationship to a zoning law purpose.) Furthermore, whether the number of dogs kept in the kennel is more or less than 10, there will be some barking during the dogs' waking and exercise periods and whether this is disturbing depends as much on the size of the dogs in the kennel, and the nature of their barks and training, as on the number of dogs in the kennel. If, in fact, their noise does constitute a public nuisance adversely affecting neighboring residents, as paragraph " Twelfth " of the complaint alleges, the remedy does not lie in the use of the zoning ordinance. An examination of this court's decision in *Matter of Schlosser* v. *Michaelis* (18 A D 2d 940, *supra*) leads me to conclude that the provision limiting the permission to the training of no more than 10 dogs at a time must be held invalid, as an effort to control the nature of the operation of the business. It is not a limitation on a zoning use; instead, it purports to limit the use of the premises to a special kind of kennel rather than their use for a commercial kennel, a general use permitted under section 2(b) of article V of the Zoning Ordinance then in effect (see, also, *Bernstein* v. *Board of Appeals of Vil. of Matinecock*, 60 Misc 2d 470; *Matter of Oakwood Is. Yacht Club* v. *Board of Appeals of City of New Rochelle*, 32 Misc 2d 677). Appellant's contention that the failure of defendant's predecessor to attack the limited grant of the application to use the premises for a kennel by means of a proceeding under article 78 of the CPLR resulted in forfeiture of this defendant's right to attack the validity of the condition when the town sought to enforce it against him some 19 years later lacks merit. In the first place, when appellant failed to raise this issue in the trial court, it forfeited its right to raise it on appeal (*Telaro* v. *Telaro*, 25 N Y 2d 433, 438–439; *Cohn* v. *Goldman*, .76 N. Y. 284, 287). Secondly, it would be ironic to uphold this contention in view of the fact that the grant of a special exception was based on the Board of Appeals' conforming the grant to the claimed needs of the applicant. It would be flying in the face of common sense to argue that the limitation must stand because an apparently willing applicant, whose application had been granted in conformity with his desires, did not then attack the invalid limitation in an article 78 proceeding. Again, the failure of the appellant town to take action to insure that any purchasers from the original applicant would be put on notice of the limited nature of the special exception for kennel use of the premises makes the result under review an equitable one. The certificate of occupancy issued to defendant's predecessor did not mention the limitation contained in the minutes of the executive meeting of appellant's Zoning Board of Appeals on November 7, 1952. That fact made it difficult, if not impossible, for defendant, when purchasing the premises, to learn of the limitation in the course of an ordinary title search, since such a search

does not normally include examination of minutes of meetings of a board of zoning appeals; and whether the original minutes of the board meeting were ever transcribed or where reference to them could be found nowhere appears in the record. Finally, the failure of the town authorities to take any action against the original applicant over a 16-year period, in which he had operated his kennel as an ordinary commercial kennel, at which he boarded, bred and trained dogs without regard to the board's limitation and even had advertised his offer of such general kennel services in various periodicals, could serve only to lead any possible purchaser of the premises to believe, with good reason, that the original applicant had received permission to use the premises in exactly the way in which he was using them, i.e., for general commercial kennel purposes. Under all the circumstances, the judgment should be affirmed.

