HALFWAY HOUSE, legally known as Community Corrections Services, Inc., Plaintiff-Appellee, v. THE CITY OF WAUKEGAN, Defendant-Appellant (Darlene P. Hansen, Plaintiff).

Second District   No. 2—93—1233

Opinion filed September 29, 1994.—Modified on denial of rehearing November 1, 1994.

Robert J. Masini, of Diver, Grach, Quade & Masini, of Waukegan, for appellant.

Hercules Paul Zagoras, of Hercules Paul Zagoras & Associates, Ltd., of Waukegan, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, the City of Waukegan (the City), appeals the circuit court's order declaring invalid certain conditions which the City attached to a conditional use permit granted to plaintiff, Rebound, Inc. The City contends that the court's order unduly interferes with the City's legislative authority to impose reasonable conditions upon the granting of such a permit.

Rebound, then legally known as Community Correction Services, Inc., and commonly known as Halfway House, filed applications for rezoning and for a conditional use permit for certain property on Lewis Avenue in the City. Plaintiff sought rezoning from R-2 to R-5 plus a conditional use permit to allow the construction and operation of a residential rehabilitation center for youthful offenders convicted of nonviolent offenses. Under Waukegan's zoning ordinance, a residential rehabilitation center is a permitted conditional, or special, use in an R-5 zone. At the time, plaintiff operated a halfway house accommodating approximately 15 to 20 residents at another site in the City. Plaintiff's plan called for the construction of a new facility at the Lewis Avenue site which would house 46 residents.

The City's development commission conducted a public hearing on plaintiff's request. The commission recommended against approving the request, and the city council adopted this recommendation. Plaintiff sought review of the council's decision in the circuit court of Lake County.

The matter was tried before Judge Radosevich. Janet Mason testified that she is plaintiff's executive director. At the time of trial, plaintiff's facility had 15 residents. Their average age was 18. The residents are referred to plaintiff by the circuit court or by the juvenile division of the Department of Corrections. Plaintiff carefully screens potential residents, rejecting those who show violent characteristics, have a poor attitude toward rehabilitation, have strong gang affiliations, or have mental or substance abuse problems. Residents are not permitted to have cars and may leave the halfway house only with permission to go to work, to visit family and friends,

or to run personal errands such as going to the store. At least one staff member is on duty 24 hours a day.

Judge Radosevich found the City's zoning ordinance unreasonable as applied to plaintiff's property and found that plaintiff's proposed use was reasonable. The court ordered the City to rezone the property to R-5 and to grant plaintiff a conditional use permit. In the factual findings portion of its order, the court found that the City was bound to place reasonable restrictions on plaintiff's proposed use, but could not completely prohibit it.

The City did not appeal Judge Radosevich's order. Instead, the development commission conducted further hearings. Following the hearings and various discussions between plaintiff, the City, and neighboring residents, the development board proposed 14 conditions to the granting of the conditional use permit. The city council voted to rezone the property and grant the conditional use permit subject to the 14 conditions proposed by the development board.

Plaintiff filed a petition for a rule to show cause in the circuit court, contending that five of the proposed conditions did not substantially conform to the court's prior order. Specifically, plaintiff objected to the following conditions: (1) a requirement that plaintiff submit any site development plan to the United States Environmental Protection Agency (EPA) for approval because the property abuts a closed landfill; (2) limiting the number of residents to 32 instead of 46; (3) increasing the number of monitors or trained staff present at the facility from one for 1 through 23 residents and two for 24 through 46 residents to one for 1 through 16 residents, two for 17 through 32 residents, and three for 33 through 46 residents; (4) prohibiting the acceptance of any "individual known to be a rapist or adjudged guilty of an offense involving activity of a sexual nature"; and (5) providing for the revocation of the conditional use permit following 14 days' notice of a violation of a listed condition. The ordinance numbers these conditions differently, but for convenience we will continue to use the numbering system used here.

Following a hearing, Judge Trobe sustained the third condition but declared the others invalid. The City then perfected this appeal. Plaintiff did not cross-appeal from the court's order upholding the third listed condition. On appeal, the City does not contest the court's order insofar as it invalidated the first condition. Thus, at issue in this appeal are the second condition, reducing the number of residents to 32, the fourth condition, prohibiting the acceptance of anyone "convicted of an offense of a sexual nature," and the fifth condition providing for the revocation of the permit following 14 days' notice of a violation. Because each condition involves a different legal analysis, we consider each one separately.

The City first argues that the court erred in rejecting the second condition, limiting the number of residents to 32. The court's order states, "The trial court has previously ruled that 46 residents was a reasonable use," and therefore the condition attempting to further restrict the number of residents was invalid and of no effect. The City contends that Judge Radosevich did not find specifically that a 46-resident facility was a reasonable use and, had he done so, he would have improperly interfered with the City's legislative function to establish reasonable conditions for the granting of a conditional use permit.

Plaintiff contends, essentially, that its proposal called for a 46-unit facility and, therefore, by ordering the City to issue a permit, Judge Radosevich must have approved a 46-unit facility. The City responds that the ability to regulate the size of the facility is part of the City's power to impose reasonable conditions on the special use. The City contends that the judge could not have intended to usurp the City's legislative function.

No language in Judge Radosevich's order specifically approves of a 46-unit halfway house. The order merely finds that a halfway house is consistent with the uses in the surrounding neighborhood. The order also remands the cause to the Waukegan development commission to impose reasonable conditions on the special-use permit. Therefore, if restricting the size of the facility to 32 residents is the type of condition which the City may impose pursuant to its zoning power, it was error to invalidate the condition on the ground that it conflicted with the prior order.

The Illinois Municipal Code (Code) expressly provides for the creation of special uses within particular zoning classifications. The Code provides that a special use "shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefor may be subject to conditions reasonably necessary to meet such standards." 65 ILCS 5/11—13—1.1 (West 1992).

In *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, this court stated:

> "In judicial review of a denial of a special-use permit, the court is concerned with the constitutionality of the special-use denial insofar as it prohibits a particular use *as designed*." (Emphasis in original.) (*La Salle National Bank*, 27 Ill. App. 3d at 15.)

In *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, the supreme court discussed the scope of judicial review of the denial of a special-use permit. The court noted that if the final legislative authority of the municipality rejects the application in its entirety, there are no

conditions or restrictions imposed by the zoning authority for the court to review. (*Duggan*, 60 Ill. 2d at 115.) Thus, a finding that the existing zoning is unconstitutional as applied to the particular property recognizes only that the type of use proposed would be compatible with the surrounding area. (*La Salle National Bank*, 27 Ill. App. 3d at 15-16.) The court noted that such a finding does not impinge the municipality's authority to impose reasonable conditions. *La Salle National Bank*, 27 Ill. App. 3d at 21.

■ Illinois courts have not had occasion to spell out what types of conditions may be imposed on a special use except that these conditions must be reasonably necessary to protect the public health, safety, and welfare. (*Cosmopolitan National Bank v. Village of Niles* (1983), 118 Ill. App. 3d 87, 92; *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 21.) Generally, courts have upheld reasonable conditions, even though they severely restrict the scope of the operation. Recently, for example, this court approved an ordinance limiting the operation of a gravel pit to five years, with review and possible extension of the permit at the end of that period. *Rockford Blacktop Construction Co. v. County of Boone* (1994), 263 Ill. App. 3d 274, 635 N.E.2d 1077.

One commentator has noted that conditions must relate directly to, and be incidental to, the proposed use of the property and not to the manner of the operation of the business conducted thereon. (3 R. Anderson, American Law of Zoning § 21.31, at 751 (3d ed. 1986).) Such conditions may regulate the size of the proposed venture. (See *Town of Huntington v. Sudano* (1973), 42 A.D.2d 791, 346 N.Y.S.2d 582 (ordinance limiting number of dogs in kennel facility upheld).) In the closely analogous area of zoning variances, it has been held that the municipality could restrict the number of apartments in a proposed building to 49 instead of the proposed 70. *In re Board of Supervisors* (1980), 49 Pa. Commw. 267, 412 A.2d 163.

■ In light of these authorities, the condition restricting the halfway house to 32 residents is one which the City may properly impose if it is otherwise reasonable. The size of the proposed facility is only a condition of operation and does not relate to the nature of the proposed use. Since the City initially rejected plaintiff's application in its entirety, there were no conditions before the court for it to review and it could not have passed on the reasonableness of such a condition in its initial order. Rather, such a condition was contemplated by the portion of the order remanding the matter to the development commission to impose reasonable conditions.

The court below erred in finding that the condition restricting the facility to 32 residents conflicted with Judge Radosevich's order.

That portion of the judgment must be reversed. Because the court decided the question on that basis, it did not determine whether the 32-person restriction was otherwise reasonable. Therefore, the cause must be remanded for further hearings on this question.

The next issue is whether the court below erred in invalidating the condition prohibiting the halfway house from accepting residents who have been convicted of offenses "of a sexual nature." The court found that this condition was void for vagueness.

■ As a matter of due process, a statute is void if it is so vague that persons of " 'common intelligence must necessarily guess at its meaning and differ as to its application.' " (*Ardt v. Illinois Department of Professional Regulation* (1992), 154 Ill. 2d 138, 156-57, quoting *Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127.) This rule applies to zoning ordinances. (*Hahnenkamp v. Madison County* (1989), 183 Ill. App. 3d 76, 85.) Furthermore, an ordinance must provide adequate guidelines to the administrative body which must enforce it. *City of Aurora v. Navar* (1991), 210 Ill. App. 3d 126, 132.

■ The condition in question prohibits the halfway house from accepting any "individual known to be a rapist or adjudged guilty of an offense involving activity of a sexual nature." (City of Waukegan, Ill., Ordinance 93—0—147, § 2.10(b) (August 2, 1993).) The obvious purpose of this provision is to assuage the fears of neighboring residents that the halfway house will become home to persons convicted of serious sex offenses. However, as plaintiff points out, the Criminal Code of 1961 (Criminal Code) creates a number of offenses within the general category "Sex Offenses." (720 ILCS 5/11—6 *et seq.* (West 1992).) These consist primarily of misdemeanor offenses many of which, such as adultery and bigamy, have little if anything to do with the offender's dangerousness to society. Conversely, more serious offenses which have traditionally been viewed as sex crimes, such as criminal sexual assault and criminal sexual abuse, are codified in the following article of the Criminal Code, entitled "Bodily Harm" and generally encompassing crimes of violence. (720 ILCS 5/12—13, 12—15 (West 1992).) Under the ordinance as passed, does "activity of a sexual nature" encompass merely those crimes classified as "sex offenses" by the Criminal Code, or does it include crimes of violence which inherently include sexual activity? Furthermore, a crime which would not normally be considered a sex crime may nonetheless have sexual overtones. (See *People v. Cunningham* (1994), 265 Ill. App. 3d 3 (conviction of residential burglary with intent to commit criminal sexual assault).) Are such offenses included also? Does "judged guilty" of an offense refer solely to the offense for which the

resident was referred to plaintiff, or to any prior conviction or juvenile adjudication?

Under the ordinance as passed, before admitting a resident, plaintiff would have to conduct a detailed investigation into the facts of the underlying offense and determine whether the dominant character of the offense was sexual. Moreover, since the ordinance provides no standards, the zoning authorities could simply disagree with plaintiff's conclusion and find a violation of the ordinance anyway. In short, the trial court did not err in concluding that this condition is too vague to be enforceable.

■ The third issue concerns the provision of the ordinance that plaintiff must remedy any violation of the conditions within 14 days. Plaintiff contended, and the trial court agreed, that this portion of the ordinance denied plaintiff procedural due process where it conflicted with the generally applicable provisions of the Waukegan zoning ordinance.

On appeal, the City contends that the provision is reasonable, since the City's zoning ordinance provides that the zoning administrator shall enforce the terms of the ordinance. The City's argument is somewhat disingenuous. Citing *People ex rel. J.C. Penney Properties, Inc. v. Village of Oak Lawn* (1976), 38 Ill. App. 3d 1016, the City contends that it is obligated to follow its existing ordinances. However, as the City candidly admits, its generally applicable zoning ordinance provides for a 30-day compliance period. Waukegan, Ill., Zoning Ordinance § 3.2(4) (19___).

In *J.C. Penney Properties*, defendant denied plaintiff's application to open a restaurant on the basis of an informal "moratorium" on new restaurants which was "informal, unwritten and selectively applied." (38 Ill. App. 3d at 1018.) The court affirmed the trial court's order that the village issue the required permits, noting that village authorities "have no power to suspend, even temporarily, their own ordinances." (38 Ill. App. 3d at 1019.) To the extent that *J.C. Penney Properties* is germane to this issue, it appears to support plaintiff's position. The City has pointed to no evidence in the record demonstrating that in this particular case a 14-day, rather than a 30-day, notice period is necessary to protect the health, safety, and morals of the community.

Although the City asks us to defer to its legislative judgment, it has not provided the minutes or other record of the proceedings before the development commission or the City council at which it was determined that a 14-day notice period was desirable. We cannot defer to the legislative body's factual findings where those findings are not included in the record. The appellant has the burden to pres-

ent a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. Any doubts arising from the incompleteness of the record will be resolved against the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389.) Since the City has presented no evidence that a 14-day, rather than a 30-day, notice period is necessary, the trial court did not err in finding this provision unreasonable.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings.

Affirmed in part; reversed in part and remanded.

DOYLE and COLWELL, JJ., concur.