OPINION OF THE COURT
F. Dana Winslow, J.
Plaintiffs’ motion for an order (i) enjoining defendants from enforcing Local Law No. 10 (2000) of Village of Westbury, codified as Village Code § 248-251.1, and Local Law No. 4 (2001) of Village of Westbury, codified as Village Code chapter 128, and (ii) directing defendants to resume processing plaintiffs’ application for site development is determined as follows.
Factual Background and Procedural History
Plaintiff Louhal Properties, Inc. (Louhal) is the owner of the premises known as 200 Post Avenue, at the northeast corner of Post Avenue and Maple Avenue (the property), within the Village of Westbury, in Nassau County, New York. In October 1998, plaintiff 7-Eleven, Inc., formerly known as the Southland Corporation (7-Eleven), acquired a leasehold interest in the property, which was currently in use as a gasoline service station, for purposes of establishing a 7-Eleven store. The property was zoned for business use. Plaintiffs anticipated use of the property as a 7-Eleven store, which typically remains open 24 hours a day, complied with all applicable zoning laws existing at the time.
On January 21, 1999, 7-Eleven filed its building permit application and its application for site plan review with the Village of Westbury Building Department. (Defendants constituting the Board of Trustees of the Village of Westbury and/or the Village of Westbury Planning Board shall be hereinafter referred to as the Village.) From the start, issues arose that impeded 7-Eleven’s progress. The primary obstacle, from 7-Eleven’s perspective, was the Village’s insistence that 7-Eleven address certain environmental concerns arising from the prior use of the premises as a gasoline service station. Five days after submitting their application, plaintiffs were directed to conduct an environmental study known as a “Phase II Environmental Review” to determine the extent of soil *748 contamination. In May 1999, plaintiffs were required to complete and return a long-form environmental assessment form pursuant to the implementing regulations of the State Environmental Quality Review Act (ECL art 8). At a public hearing held on August 3, 1999, the Village Planning Board informed 7-Eleven that it would not undertake a site plan review of the property until remaining environmental issues were identified and a plan for remediation was developed and approved by the United States Environmental Protection Agency (EPA).
In the interim, the Village asserts that it began to receive complaints from residents about the manner of operation of certain businesses, at other sites in the Village, located in close proximity to residential property. According to the Village, there was increasing public concern about the cumulative effect of a growing number of businesses remaining open all night. In particular, the Village referred to a car wash that had announced its intent to begin 24-hour operation, and to a proposed establishment of a Dunkin’ Donuts on property adjacent to an all-night diner. On April 6, 2000, the Board of Trustees amended the Village Code, which already restricted 24-hour uses with respect to gasoline stations, to extend the restriction to car washes as well. In addition, the Board imposed a 90-day moratorium on the establishment of any new 24-hour uses within the Village.
By October 2000, 7-Eleven had obtained EPA approval for its environmental remediation plan, and on October 19th, it requested that the Planning Board resume its site plan review. On November 2, 2000, Village Board of Trustees enacted Local Law No. 10 (2000) of Village of Westbury, codified in the Village Code as section 248-251.1 (the Zoning Ordinance). The Zoning Ordinance prohibits a business, located within 100 feet of property zoned for residential use, from operating between the hours of 11:00 p.m. and 6:00 a.m. the following day. A business located elsewhere within the Village may operate during such hours only if it first obtains a special use permit.
The enactment of the Zoning Ordinance effectively aborted 7-Eleven’s plans for developing the property. Because 7-Eleven intended to operate as a 24-hour business, and because the property is located within 100 feet of residentially zoned property, 7-Eleven’s proposed use would violate the newly enacted ordinance. The Planning Board notified 7-Eleven that it would no longer consider its application unless it first obtained a special use permit (which 7-Eleven could not do, because, under *749 the law as interpreted by the Village Attorney, a business located within 100 feet of residentially zoned property is not eligible for a special use permit).
7-Eleven commenced the instant action on April 30, 2001 seeking a declaration that the Zoning Ordinance was invalid and unconstitutional. In particular, 7-Eleven asserted, among other things, that (i) the enactment of the Zoning Ordinance exceeded the zoning powers delegated to the local government under Village Law § 7-700; (ii) the Zoning Ordinance is preempted by the Alcoholic Beverage Control Law which regulates the,hours of operation of businesses licensed to sell alcoholic beverages; and (iii) the Zoning Ordinance is an unconstitutional exercise of police power, which deprives 7-Eleven of the use of its property without due process of law. By order to show cause, 7-Eleven brought the instant motion for a preliminary injunction, to enjoin the defendants from enforcing the Zoning Ordinance and directing the defendants to immediately proceed with 7-Eleven’s application for site development.
While the motion was pending, and apparently in response to 7-Eleven’s argument that the Zoning Ordinance was invalid as a zoning law, the Village Board of Trustees enacted Local Law No. 4 (2001), codified in the Village Code as section 128-1 (the General Legislation). This law incorporates the same provisions contained in the Zoning Ordinance, but is enacted as general legislation, and provides criminal penalties for violation of the law.
Oral arguments on the instant motion were held on November 19, 2001 and December 19, 2001, and included discussion of both the Zoning Ordinance and the General Legislation. Upon 7-Eleven’s oral application, the court determined that it would treat the instant motion as a motion for summary judgment pursuant to CPLR 3212 and for permanent injunctive relief with respect to both items of legislation.
I. State Law Preemption
The court shall first consider 7-Eleven’s challenge to the Zoning Ordinance and the General Legislation on the ground that these local laws, as applied to 7-Eleven, are preempted by the Alcoholic Beverage Control Law. 7-Eleven intends to sell alcoholic beverages (beer) at the proposed 7-Eleven store and to obtain a license from the State Liquor Authority in accordance with the State Alcoholic Beverage Control Law. 7-Eleven asserts that New York State liquor licenses are typically issued to 7-Eleven stores in Nassau County. (Reply affirmation, at 3, exhibit E.)
*750 The Court of Appeals has determined that the Alcoholic Beverage Control Law, having created a regulatory system that is both comprehensive and detailed, is. preemptive of local law with respect to establishments selling alcoholic beverages. (Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs, 74 NY2d 761; People v De Jesus, 54 NY2d 465.) “Since the State has preempted any local regulation concerning the subject matter of hours of operation, distri - bution, or consumption, local laws which concern the same subject matter must give way to the State law * * * . [T]he direct consequences of a local ordinace * * * [may] not ‘render illegal what is specifically allowed by State law.’ ” (Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs, supra at 764, quoting People v De Jesus, supra.)
State law prohibits a retail establishment from selling beer from Sunday mornings at 3:00 a.m. until Sunday at noon. (Alcoholic Beverage Control Law § 105-a.) There are no other state law restrictions regarding the hours that a retail establishment may sell alcoholic beverages. The Zoning Ordinance and the General Legislation would prohibit 7-Eleven from operating between the hours of 11:00 p.m. and 6:00 a.m. the next day, seven days a week. Thus, the Zoning Ordinance and the General Legislation would render illegal the retail sale of alcoholic beverages by 7-Eleven during hours in which such sale would be permitted under state law.
These local laws are, therefore, preempted by state law and could not be enforced against 7-Eleven, if 7-Eleven were licensed by the State Liquor Authority. The Village argues that the local legislation remains valid because it explicitly exempts from regulation those businesses that are permitted longer hours under state law. Village counsel concedes that the hours of operation permitted by the state would control if 7-Eleven were granted a liquor license. (Affirmation, at 13.) However, 7-Eleven asserts that the interplay of laws places 7-Eleven in an impossible situation: the state will not issue a liquor license without the Village’s prior approval of 7-Eleven’s site development plan, and the Village will not consider the site development plan without 7-Eleven’s possession of a valid state liquor license (which would exempt 7-Eleven from operation of the Zoning Ordinance). The parties cite no case law on the issue of preemption with respect to a business that is not yet operating. However, the court need not resolve this novel issue, given the court’s determination, below, on the more *751 comprehensive issues regarding the validity and constitutionality of the Zoning Ordinance and General Legislation.
II. Statutory Authority for Zoning Ordinance
The primary issue presented, with respect to the Zoning Ordinance, is whether or not it is a valid exercise of zoning power. To be valid, a zoning ordinance must “further a legitimate object and utilize a method of achieving it authorized by the state zoning enabling act.” (1 Rathkopf, Zoning § 2.03 [4] [f].) A zoning restriction “imposed for considerations or purposes not embodied in an enabling act will be held as invalid, not as exceeding the scope of the police power per se, but as an ultra vires act beyond the statutory authority delegated.” (1 Rathkopf, Zoning § 2.03 [7] [a].)
Village Law § 7-700 sets forth the grant of zoning authority to local villages, and lists specific items that a village may regulate under such authority. All enumerated items have one thing in common — they bear some relation to the physical use of land (e.g., size, height and number of stories of buildings and other structures, percentage of lot that may be occupied, the location and use of buildings, structures and land for trade, industry, residence or other purposes, etc.). The Second Department has expressly held that zoning power must “operate in relation to the use of land and not for the accomplishment of purposes extraneous to that relation.” (De Sena v Gulde, 24 AD2d 165, 171.)
Applicable case law draws a dichotomy between those regulations that directly relate to the physical use of land and those that regulate the manner of operation of a business or other enterprise. (See, generally, Matter of St. Onge v Donovan, 71 NY2d 507.) In the first group are regulations relating either to the use of land or to the potential impact of land use on neighboring properties. Courts generally uphold such regulations, including those directed at physical externalities such as light, air quality, safety, population density and traffic, and even less tangible externalities such as property values, aesthetic or environmental values. (1 Rathkopf, Zoning § 1.02 [4] [a].) In the second group are those regulations that restrict the “details of operation or manner of on-site use, * * * which do not impose externalities on nearby land.” (Id.) Such regulations are generally invalidated as bearing insufficient relationship to the physical use of land. (See, e.g., Matter of Summit School v Neugent, 82 AD2d 463; Schlosser v Michaelis, 18 AD2d 940.)
The concept of relationship to the physical use of land is often broadly interpreted. In such cases, zoning restrictions on *752 the manner or operation of an owner’s business may be upheld where the regulatory purpose is found to “substantially relate to preventing some significant adverse impact on nearby properties or the community.” (1 Rathkopf, Zoning § 2.03 [7] [a]; see, e.g., St. Onge v Donovan, supra [upholding condition limiting to two the number of vehicles that may be kept outside owner’s building during working hours, but striking condition requiring owner to phase out operation at another location]; see, also, Town of Huntington v Sudano, 42 AD2d 791, 792 [upholding limitation on the number and age of dogs permitted in a kennel, because such limitation was “directly allied to the use and enjoyment of neighboring land,” but striking limitation that confined owner’s land use to the training of dogs for the blind].)
In the case at bar, the question is whether the Zoning Ordinance is more aptly characterized as a regulation of land use or a restriction on the internal operation of a business. The Village attempts to fit the Zoning Ordinance within the first rubric by, in effect, articulating a new category of land use, namely, the 24-hour use, and citing the negative impact of such land use upon neighboring residential property. However, this attempt fails in light of the Second Department’s holding in Matter of Old Country Burgers Co. v Town Bd. of Town of Oyster Bay (160 AD2d 805). There, the town board imposed a condition on the grant of a special permit to operate a drive-through window of a Burger King restaurant, which essentially prohibited the operation of the drive-through window during mealtime hours. To justify this restriction, the board cited the prospect of a significant increase in existing traffic flow resulting from mealtime operation. The Second Department found that there was insufficient evidence to show that the proposed use would have a greater impact on traffic than other unconditionally permitted uses in the area, and characterized the condition as “an impermissible attempt to regulate the details of the operation of the petitioner’s enterprise.” (Id. at 806.)
Similarly, in the instant case, the Village has failed to adequately substantiate its claim with respect to the adverse impact of 24-hour uses on neighboring properties. There is no evidence that overnight business operations per se have a greater impact on neighboring properties than such business operations during regular hours. Close examination of the record reveals that the complaints received by the Village prior to enactment of the Zoning Ordinance related primarily to trafile, garbage and parking problems arising at other locations in the *753 Village, problems that were unrelated to the hours of operation. The Village expresses concern about the potential disruption of sleep caused by light and noise from all-night businesses in close proximity to residential property. However, as in Old Country Burgers, such concern is conjectural at this point, supported only by a consultant’s report on 24-hour uses commissioned by the Village after instituting its 90-day moratorium. (Defendants’ submission, exhibit 48.) The record is devoid of prior complaints related to noise or light, or to the hours of operation of any of the existing 24-hour businesses. (Compare, Matter of Sheer Pleasure Lingerie v Town of Colonie Planning Bd., 251 AD2d 859 [upholding the determination of the town planning board to cut back hours of operation of an adult lingerie modeling business (a nonconforming use), that had been inadvertently expanded through administrative error; the Third Department noted residents’ complaints relating to an increase in crime, vandalism and other disturbances such as outdoor urination and motor vehicle traffic, that were based on the residents’ actual experiences during the one-year period in which the hours were extended].)
Under the rule in Old Country Burgers (supra), absent substantial evidence showing the external impact of the land use in question, a restriction on hours of operation must be deemed an impermissible attempt to regulate the details of the operation of a business. As such, the Zoning Ordinance represents an invalid exercise of zoning power, and may not be upheld.
III. Constitutionality of General Legislation
If the Zoning Ordinance is stricken as an ultra vires legislative act, then the Village would be required to resume consideration of 7-Eleven’s site development plan, because 7-Eleven’s proposed use would no longer violate zoning law. 7-Eleven would be permitted to operate, subject to the threat of prosecution under the General Legislation. The only remaining issue is whether the General Legislation is a valid exercise of police power or whether it represents an unreasonable and unconstitutional interference with the beneficial enjoyment of real property.
A local government, through the general authority delegated by the state, has the power to “regulate business in the interest of the community at large, and to protect the public health, safety, morals and well-being.” (Cowan v City of Buffalo, 247 App Div 591, 593.) Although the police power is broad and comprehensive, and such regulation is afforded a presumption *754 of constitutionality, the power to regulate in the public interest does not include unlimited license to encroach upon private interests. (See, Goldblatt v Town of Hempstead, 369 US 590; People v Bunis, 9 NY2d 1.) Local legislation may not “deprive a person of his property by curtailing his power of sale, * * * unless this infringement and deprivation are reasonably necessary for the common welfare.” (People v Bunis, supra at 4, quoting People v Gillson, 109 NY 389, 400.)
The New York Court of Appeals has articulated a three-prong test to justify public interference with the beneficial enjoyment of real property. A municipality must show “that it has acted in response to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and that it is presently taking steps to rectify the problem.” (Matter of Belle Harbor Realty Corp. v Kerr, 35 NY2d 507, 512; Matter of Charles v Diamond, 41 NY2d 318.) The regulation must be an “emergency measure * * * circumscribed by the exigencies of that emergency.” (Id.) 7-Eleven argues that the Zoning Ordinance and General Legislation fail to meet this standard. However, in both Belle Harbor and Charles v Diamond, the local actions complained of completely deprived a landholder of all use of the property (revocation/nonissuance of building permits because of sewer system inadequacies). The three-prong test may not apply when the landholder retains reasonable use of the property. (Charles v Diamond, supra at 326 [“Mere financial loss is not enough, but the restriction on use must be so great as to deprive the owner of any reasonable use of the property to which any owner would be generally entitled to put the property”].) In the instant case, if the Zoning Ordinance were held invalid, the Belle Harbor standard might be rendered inapplicable, because the General Legislation alone would not bar all use of the property by 7-Eleven. 7-Eleven could develop the property and operate a 7-Eleven, store for at least 17 hours a day.
The court need not decide this issue, however, because the General Legislation fails under the more lenient standard of reasonableness held applicable to the regulation of business operations. (See Matter of Tyson v Tyler, 24 NY2d 671 [invalidating a regulation prohibiting licensed ticket brokers from selling to unlicensed agencies outside New York for purposes of resale]; People v Bunis, supra [invalidating law prohibiting the sale of magazines from which the cover page had been removed]; Cowan v City of Buffalo, supra [invalidating an ordinance that restricted the hours of operation of an *755 open air fruit stand].) To justify regulatory interference with the conduct of a private business, there must be (i) some “real or substantial evil” (not necessarily a dire emergency) that the regulation is designed to cure, and (ii) a “reasonable relation between such menace and the remedy proposed.” (Cowan v City of Buffalo, supra at 594; see, also, Salamar Bldrs. Corp. v Tuttle, 29 NY2d 221.) Where the facts and circumstances show that an ordinance in question is arbitrary, capricious or unreasonable, or where the remedy proposed is “unduly oppressive,” it will not be upheld. (People v Bunis, supra; Cowan v City of Buffalo, supra; Tyson v Tyler, supra; Trio Distrib. Corp. v City of Albany, 2 NY2d 690.)
In the instant case, 7-Eleven has shown that the General Legislation will interfere with its customary business operations, although the extent of potential financial loss has not been demonstrated. More crucial, however, is that the record fails to establish the existence of a “substantial evil.” As discussed above, the “numerous complaints” cited by the Village dealt with problems unrelated to overnight use, such as parking, traffic and garbage. Significantly, not one resident spoke about potential noise, loitering or sleep disturbance until prompted to do so by the Village Attorney and the Mayor at a public meeting held after this litigation began. (Sur answer affirmation, exhibit 39.) The record contains no unsolicited letters or petitions, or any other spontaneous complaints by residents, regarding problems specifically created by overnight operations.
The court accepts that the local legislation was adopted by the Village in good faith, out of legitimate concern for a potential harm to residents living adjacent to business properties. However, even if the harm were substantiated by a substantial record of complaints based on actual experience, the General Legislation could not stand because this particular remedy does not bear a reasonable relationship to the harm confronted.
First, the General Legislation is overly broad. In addition to potentially harmful conduct, it makes punishable conduct that poses no threat at all to the health and welfare of residents. (Cf. People v Bunis, supra at 4 [“The Legislature may not validly make it a crime to do something which is innocent in itself merely because it is sometimes done improperly”].) In determining the validity of an ordinance, “it is necessary to consider what would legally be possible in its general enforcement.” (Trio Distrib. Corp., supra at 697.) Under the *756 General Legislation, it would be legally possible for the police to punish, not only a retail store, diner or car wash, but any in - dividual doing business during the proscribed hours, such as a lawyer, accountant, or health care provider. Clearly these individuals would not generate the level of noise, light or traffic that would disturb their neighbor’s sleep, and yet these individuals could be prosecuted under the General Legislation. (See People v Kuc, 272 NY 72 [invalidating ordinance aimed at preventing noisy “hawking” of newspapers, because it prohibited all sales of newspapers on village streets after 9:00 p.m.].) The regulation is not saved by the fact that 24-hour operation remains permissible in some areas of the Village, as the regulation still reaches holders of property in the restricted zones whose businesses may be unnecessarily and unreasonably burdened.
Second, the General Legislation is not well adapted to solve the problem it purports to address. The problem is not the operation of business itself, but the noise, light, traffic and loitering such business purportedly generates. Here, the law would prohibit an accountant from seeing a client after 11:00 p.m., but would have no effect on late-night residential parties, bars and clubs serving alcohol, or noisy traffic in certain residential neighborhoods. While a law need not pose a complete solution to a particular problem, it should not operate illogically, especially where it does so at the expense of private business owners. (See Cowan v City of Buffalo, supra [law limiting hours of operation of open air fruit stand was not reasonably related to problem of cleanliness of the market or dust on the produce]; Trio Distrib. Corp., supra [requirement of second attendant on ice cream vending truck was not reasonably related to the goal of protecting children from traffic hazards].)
The goals asserted by the Village could be promoted through less onerous and more effective means, such as the adoption and/or vigorous enforcement of laws specifically addressed to the levels of light and noise generated in proximity to residential property. In support of its legislation, the Village cites two cases upholding restrictions on the hours of operation of a recycling business and a race track, respectively. (See Matter of Taylor Tree v Planning Bd., 272 AD2d 336; Town Bd. of Town of Southampton v 1320 Entertainment, 236 AD2d 387.) However, neither case sets forth the facts and reasoning underlying its determination or provides any guidance for extending its application. Further, neither case presents facts in which the operation of all business is prohibited during par *757 ticular hours, without regard to the nature of the business or its impact on adjacent properties. On the facts and circumstances of the instant case, in light of the precedent discussed above, the court determines that the General Legislation fails to satisfy the standard of reasonableness and, thus, may not be upheld.
The court determines that the extensive record herein presents no triable issue of material fact. (See CPLR 3212.) Accordingly, it is ordered that the motion of 7-Eleven for summary judgment is granted. The Village shall be enjoined from enforcing the Zoning Ordinance or the General Legislation. It is further ordered that the Village shall proceed with the processing of 7-Eleven’s site development application.